UNITED STATES, Appellee,

v.

Rodney R. CORNWELL, Captain,
U.S. Air Force, Appellant.

No. 97–0623.
Crim.App. No. 32169.

U.S. Court of Appeals for
the Armed Forces.

Argued March 24, 1998.

Decided Oct. 1, 1998.

For Appellant: *Major Kevin P. Koehler* (argued); *Colonel Douglas H. Kohrt* and *Lieutenant Colonel Kim L. Sheffield* (on brief).

For Appellee: *Major Allen G. Erickson* (argued); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Michael J. Breslin* (on brief).

### Opinion of the Court

COX, Chief Judge:

The granted issue in this case asks:

WHETHER THE INFORMATION CONTAINED IN THE STAFF JUDGE ADVOCATE'S 7 MAY 1996 STAFF SUMMARY SHEET TO THE CONVENING AUTHORITY CONTAINS "NEW MATTER" WHICH WAS NOT PROVIDED TO DEFENSE COUNSEL FOR COMMENT AS REQUIRED BY RCM 1106(f)(7).

Appellant, a service academy graduate, was convicted in accordance with his pleas of making a false official statement, damaging military property, and conduct unbecoming an officer (one specification each of wrongfully using a cipher lock code and wrongfully gaining access to restricted information), violations of Articles 107, 108, and 133, Uniform Code of Military Justice, 10 USC §§ 907, 908, and 933, respectively. In exchange for appellant's offer to plead guilty, the convening authority agreed to withdraw several other specifications and to disapprove confinement in excess of 8 months. The military judge, sitting alone as a general court-martial, sentenced appellant to dismissal, confinement for 2 months, and forfeiture of $1,000 pay per month for 2 months. The convening authority approved the sentence, and the Court of Criminal Appeals affirmed.

The following "facts" of this appeal are derived from the face of various papers in the record of trial and from the representations of the parties: In accordance with RCM 1106, Manual for Courts–Martial, United States (1995 ed.), the staff judge advocate (SJA) prepared a posttrial recommendation, which was duly served on the defense. In response, the defense submitted a clemency petition, together with numerous attachments. Accordingly, the SJA prepared an addendum to his recommendation, which referenced the clemency matters submitted by the defense and instructed the convening authority to consider all such matters. No new matters were included in the SJA's addendum, and there is no contention of impropriety in the review process to this point.

On May 7, 1996, the SJA prepared a cover sheet, specifically a "Staff Summary Sheet," AF Form 1768, to accompany the recommendation, addendum, and clemency matters. On the summary sheet, the convening authority hand wrote a brief, undated note asking the SJA what the three subordinate commanders in appellant's chain of command thought about the appropriateness of the sentence.

Below this handwritten note, the following typed, signed "MFR" (memo for the record) by the SJA appears:

MFR—14 May 96

I personally talked to each of the above commanders for ... [the convening authority]. They each informed me that they recommended to approve the sentence as adjudged. I verbally informed ... [the convening authority] of their recommendation.

The convening authority took action on May 14, 1996. Presumably the SJA's MFR was written afterward to document this communication.

It is the verbal conversation that preceded the MFR that appellant contends undermined the review process. Accordingly, appellant urges that the convening authority's action should be set aside and that a new recommendation and action should be ordered.

RCM 1106(f)(7) provides: "When new matter is introduced after the accused and counsel for the accused have examined the recommendation, ... the accused and counsel for the accused must be served with the new matter and given 10 days from service of the addendum in which to submit comments."

In our view, RCM 1106(f)(7) does not apply to the types of oral conversations between the convening authority and his SJA that took place in this case. RCM 1106(f)(7) is based on *United States v. Narine*, 14 MJ 55 (CMA 1982). Drafters' Analysis of RCM 1106(f)(7), Manual, *supra* at A21–81. The service requirement imposed by *United*

*States v. Goode,* 1 MJ 3 (CMA 1975), and *Narine* applied to the lengthy and detailed legal analysis required by the 1950 version of Article 61, UCMJ, 10 USC § 861, and the Manual for Courts–Martial, United States, 1951.

■ The Military Justice Act of 1983 eliminated the requirement for a detailed legal review. The purpose of this change was to reduce posttrial litigation by streamlining posttrial procedures and adopting an "object now or waive forever" approach to errors in the posttrial recommendation. *See United States v. Moseley,* 35 MJ 481, 487 (CMA 1992) (Gierke, J., concurring in part and dissenting in part). The skeletal posttrial recommendation required after 1984 necessarily contemplates that a convening authority may ask questions and expect his SJA to answer them.

■ Article 60(d), UCMJ, 10 USC § 860(d) (1983) and RCM 1106 specify the matters that must be included in the SJA's written posttrial recommendation. There is nothing in Article 60(d) or RCM 1106 requiring that oral posttrial dialog between the SJA and the convening authority be reduced to writing or served on the accused. To adopt appellant's argument would transform the posttrial recommendation and addenda thereto into something that Congress and the President intended to eliminate. Accordingly, we hold that the SJA did not violate RCM 1106(f)(7) by orally responding to his convening authority's question without serving a written record of his conversation on the defense.

Furthermore, there is nothing in the UCMJ or the Manual for Courts–Martial prohibiting a convening authority from consulting with his subordinate commanders or members of his staff other than his SJA regarding a petition for clemency. However, RCM 1107(b)(3)(B)(iii) provides: "[I]f the convening authority considers matters adverse to the accused from outside the record, with knowledge of which the accused is not chargeable, the accused shall be notified and given an opportunity to rebut." The rules do not define "new" or "adverse" matters. Conversations among commanders concerning significant personnel actions are routine, and the views expressed in such conversations may or may not be favorable. Under these circumstances, it is not at all clear that this was what the rules drafters had in mind.

■ Nevertheless, assuming without deciding that the subordinate commanders' recommendations should have been served on appellant sufficiently in advance of the convening authority's action to permit comment or rebuttal, we hold that no error occurred which prejudiced appellant's substantial rights. Art. 59(a), UCMJ, 10 USC § 859(a).

■ At the very least, a complete copy of the record of trial, including the papers bearing the SJA's MFR, would have been in the possession of the defense by the time of appellant's appeal to the Court of Criminal Appeals. Yet we see nothing in the appellate papers suggesting that the SJA's characterization of the subordinate commanders' recommendations was false, misleading, or incomplete. In addition, appellant has provided no indication in this appeal as to what response he would have made with respect to the subordinate commanders' recommendations. The purpose of ordering a new recommendation and action is to give an appellant who has been deprived of an important right an opportunity to be made whole. *See United States v. Buller,* 46 MJ 467, 469 (1997). When there is no hint that an appellant would have anything of substance to offer if a new recommendation and action were ordered, there is nothing to be made whole.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judges CRAWFORD and GIERKE concur.

SULLIVAN, Judge (dissenting):

It is clear from the written annotations on the staff judge advocate's submissions to the convening authority that the convening authority took a poll of his subordinate commanders and considered their advice before he took his action on this case. The poll was adverse to appellant, since the polled commanders all disapproved the clemency re-

quest of appellant. This poll was a matter outside the record of this case, and appellant should have been notified of the unexpected and unusual development.

RCM 1107(b)(2) and (3), Manual for Courts–Martial, United States (1995 ed.), speak to the matters a convening authority may consider in taking his action. They state:

(2) *When action may be taken.* The convening authority may take action only after the applicable time periods under RCM 1105(c) have èxpired or the accused has waived the right to present matters under RCM 1105(d), whichever is earlier, subject to regulations of the Secretary concerned.

(3) *Matters considered.*

(A) *Required matters.* Before taking action, the convening authority shall consider:

(i) The result of trial;

(ii) The recommendation of the staff judge advocate or legal officer under RCM 1106, if applicable; and

(iii) Any matters submitted by the accused under RCM 1105 or, if applicable, RCM 1106(f).

(B) *Additional matters.* Before taking action the convening authority may consider:

(i) The record of trial;

(ii) The personnel records of the accused; and

(iii) Such other màtters as the convening authority deems appropriate. However, *if the convening authority considers matters adverse to the accused*

*from outside the record, with knowledge of which the accused is not chargeable, the accused shall be notified and given an opportunity to rebut.*

(Emphasis added.)

This rule is clear and unambiguous. Therefore, I conclude that, if a poll of subordinate commanders is permitted and it is adverse to the accused, the accused must be given an opportunity to respond.[1] Fair play dictates such a conclusion, and the American servicemember deserves no less than a fair application of this Rule for Courts–Martial.

Accordingly, I would reverse and remand this case for a new convening authority's action—an action where the rules of disclosure are complied with. I know my view will not prevail in this case, but perhaps a future court will not allow such a secret polling of other commanders before the convening authority takes action.[2] Congress gave the convening authority the important, quasi-judicial power to review the judgment and sentence of a court-martial. When the convening authority goes outside the record, under the Rules for Courts–Martial, he or she must disclose this to an accused and give the accused an opportunity to respond.

EFFRON, Judge (dissenting):

The granted issue in this case concerns the opportunity of an accused under RCM 1106(f) to respond to any "new matter" raised in an addendum to a staff judge advocate's post-trial recommendation to the convening authority. As Judge Sullivan observes, however, the circumstances of this case also concern the obligation of the convening authority under RCM

---

1. In this case, a poll of subordinate commanders was taken to guide the convening authority in making the important clemency decision. What if, in another case in the future, a poll is taken of local religious leaders or local civilian community leaders? Are these secret polls not matters "outside the record" and something to be disclosed to the one seeking clemency? A clemency request is normally tailored to the one giving clemency. If the convening authority will be polling other people in making his or her decision, the accused in a just-completed trial should be made aware of this under a spirit of fairness, as well as under the clear meaning of RCM 1107(b)(3)(B)(iii).

2. Chief Judge Benjamin N. Cardozo of the New York Court of Appeals, in 1931, stated:

More truly characteristic of dissent is a dignity, an elevation, of mood and thought and phrase. Deep conviction and warm feeling are saying their last say with knowledge that the cause is lost. The voice of the majority may be that of force triumphant, content with the plaudits of the hour, and recking little of the morrow. The dissenter speaks to the future, and his voice is pitched to a key that will carry through the years.

B. Cardozo, *Law and Literature* 36 (1931). In 1932, Chief Judge Cardozo was raised to the U.S. Supreme Court.

1107(b)(3)(B)(iii) to provide the accused with an opportunity to rebut "matters adverse to the accused from outside the record," considered by the convening authority in taking his action on the results of trial.

In *United States v. Chatman*, 46 MJ 321 (1997), and *United States v. Catalani*, 46 MJ 325 (1997), we emphasized that, in a case involving failure to provide an appellant with an opportunity to respond to materials in a posttrial recommendation, it was necessary for the appellant to identify what, if anything, the appellant would have said in any such response. This requirement, which was given prospective effect, was designed to ensure that appellate tribunals would be able to assess the prejudice from any error. *See* Art. 59(a), UCMJ, 10 USC § 859(a). The defense filings in this case predated *Chat-*

*man* and *Catalani*, however, making it inappropriate to resolve the present appeal on the basis of appellant's failure to offer such a description.

Because the applicability of RCM 1107(b)(3)(B)(iii) was neither considered by the Court of Criminal Appeals nor addressed in the briefs before our Court, I would remand to the Court of Criminal Appeals for consideration of that rule, as well as the question of whether there was prejudicial error. In particular, I would require appellant to describe what, if anything, he would have said had he known of the adverse recommendations from the subordinate commanders, and to further explain why his opportunity for relief from the convening authority was prejudiced by his unawareness of this information.