UNITED STATES

v.

Douglas A. ANDERSON, Jr., 142 80 1884, Lance Corporal (E–3), U.S. Marine Corps.

NMCM 97 00058.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 26 Sept. 1996.

Decided 24 June 1999.

Maj Stephen D. Chace, USMC, Appellate Defense Counsel.

LtCol Clark R. Fleming, USMC, Appellate Government Counsel.

LEO and TROIDL, Senior Judges, and ANDERSON, Appellate Military Judge.

**ANDERSON, Judge:**

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of conspiracy to commit robbery, unauthorized absence, and robbery in violation of Articles 81, 86, and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, and 922 (1994). The appellant was sentenced to confinement for 20 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

In our first review of this case, we affirmed the findings and sentence, as approved on review below. *United States v. Anderson*, No. 97–00058, 1999 WL 350826 (N.M.Ct.Crim.App. 27 May 1999)(unpublished decision). The appellant then requested reconsideration, and we granted that motion.

After carefully reconsidering the record of trial, the four assignments of error, and the Government's response, we adhere to our previous ruling that, except as noted below, the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ.

In his first assignment of error, the appellant contends that his sentence is inappropriately severe. We disagree. We have carefully reviewed the record of trial and find that the sentence is appropriate in all respects for these offenses and this offender. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). The offenses committed by the appellant were serious, deserving of a serious punishment. After luring a Marine Corps staff noncommissioned officer (SNCO) away from his post as the officer-of-the-day on the pretext of requiring aid for his co-conspirator who had feigned incapacitation, the appellant clubbed the SNCO in the head twice with a baseball bat. On the second blow, the bat broke and knocked the SNCO unconscious. The appellant's co-conspirator then stole the SNCO's 9mm service pistol and ammunition clip. The SNCO suffered a fractured skull and a concussion, and he lost

his sense of smell and taste. The pistol was never recovered.

We find that the balance between the appellant's crimes and the approved sentence was fairly struck. We are confident that the military judge gave individualized consideration to the nature of the offenses and the character of the offender in reaching a just sentence. *Id.* To grant sentence relief at this point would be to engage in clemency, a prerogative reserved for the convening authority. *United States v. Spurlin*, 33 M.J. 443, 444 (C.M.A.1991); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988).

■ In his second assignment of error, the appellant, citing RULE FOR COURTS-MARTIAL 1107(b)(3)(B)(iii), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), contends that the convening authority improperly considered adverse "new matter" from the Division Chief of Staff prior to taking his action on this case. We disagree.

In accordance with R.C.M. 1106, the staff judge advocate (SJA) prepared a post-trial recommendation (SJAR) that was duly served on the defense. This SJAR included a lengthy clemency request submitted by the appellant to the convening authority. The defense did not offer any additional comments or corrections to the recommendation. Although the recommendation was addressed directly to the convening authority, with no via addresses, the Chief of Staff affixed a small note (3" × 3½") to the last page of the SJAR with the following typewritten comment:

From: Chief of Staff

To: Commanding General

For information.

Very respectfully,

Handwritten on the note were the Chief of Staff's initials and the following comments: "Lucky he didn't kill the SSgt. He's a thug, sir."

The appellant complains that he was not notified and given an opportunity to rebut the Chief of Staff's comments. He asks that we remand this case for a new SJAR and a new convening authority's action.

■ R.C.M. 1107(b)(3)(B)(iii) provides that "if the convening authority considers matters adverse to the accused from outside the record, with knowledge of which the accused is not chargeable, the accused shall be notified and given an opportunity to rebut." At issue is whether the Chief of Staff's comments are matters adverse to the appellant from outside the record. We hold that they are not. Fair comments derived from the record of trial about the offenses of which the appellant was convicted and his character are not new matters. *See United States v. Young*, 9 C.M.A. 452, 453, 26 C.M.R. 232, 233, 1958 WL 3349 (1958). In this case, the comments contained no substantive information from outside the record, and they offered no recommendation or addressed any issue not previously discussed. *See* R.C.M. 1106(f)(7), Discussion ("'New matter' includes discussion of the effect of new decisions on issues in the case, matter from outside the record of trial, and issues not previously discussed."); *United States v. Trosper*, 47 M.J. 728 (N.M.Ct.Crim.App.1997), *rev'd*, 50 M.J. 50 (1998) (summary disposition) (holding implicitly that letter sent by command sergeant major to convening authority recommending no clemency was new matter); *United States v. Catalani*, 46 M.J. 325, 327–28 (finding that SJA's comment that "seniormost military judge in the Pacific" had considered all clemency matters and imposed fair sentence was new matter); *United States v. Chatman*, 46 M.J. 321, 323 (1997) (holding that SJA's reference to information in Article 32, UCMJ, investigation and pretrial advice was matter outside the record); *United States v. Haney*, 45 M.J. 447, 452 (1996) (holding that SJA's reference to issue of sleeping court member was new matter); *United States v. Leal*, 44 M.J. 235, 236 (1996) (concluding that SJA's reference to evidence rejected by trial judge was matter outside the record). In addition, nothing in the comments was false, misleading, incomplete, or highly detrimental to the accused. *See* R.C.M. 1107(f)(4); *United States v. Cornwell*, 49 M.J. 491, 493 (1998); *Catalani*, 46 M.J. at 328; *United States v. Narine*, 14 M.J. 55, 57 (C.M.A.1982).

■ Even assuming that the Chief of Staff's comments should have been served on

the appellant for rebuttal, we hold that no error occurred which prejudiced the appellant's substantial rights. Art. 59(a), UCMJ; see *Cornwell*, 49 M.J. at 492–93 (finding no prejudice to accused by failure of SJAR to accord him opportunity to rebut where SJA verbally informed convening authority in conjunction with SJAR that subordinate commanders recommended approval of sentence adjudged); *United States v. Young*, 9 C.M.A. 452, 453, 26 C.M.R. 232, 233, 1958 WL 3349 (1958) (finding, *inter alia*, no prejudice to accused by failure of SJA to accord him opportunity to rebut expression of SJA's personal opinion in post-trial review that he found accused to be a "dull, shiftless individual of below average appearance and intelligence"). In *United States v. Chatman*, 46 M.J. 321 (1997), our superior court recognized that the remedy of returning a record for a new recommendation and action for correction of errors committed during the convening authority's post-trial review process was not necessarily "a productive judicial exercise in the absence of some indication that the information presented to the convening authority on remand will be significantly different." *Chatman*, 46 M.J. at 323. Accordingly, the court required that in all cases in which the defense was not afforded an opportunity to respond to new matter, the appellant had to demonstrate prejudice by stating what, if anything would have been submitted to deny, counter, or explain the new matter. *Id.* The threshold of showing prejudice is low: if the appellant is able to make "some colorable showing of possible prejudice," the appellant will be given the benefit of the doubt and the court will not speculate on what the convening authority might have done if the defense had been given an opportunity to comment. *Id.* at 323–24.

In this case, the appellate defense counsel stated that in response to the Chief of Staff's comments, he would have ensured that the convening authority knew (1) that the SNCO victim was not dead, but fully deployable, (2) that the appellant was acquitted of attempted murder, and (3) that the appellant was not a thug. Based on this prospective submission by the defense, we find that the appellant has failed to make "some colorable showing of

possible prejudice." First, in his note to the convening authority, the Chief of Staff did not imply that the victim was almost dead or that he was not fully deployable. What he said was that the appellant was "lucky" that he did not kill the SNCO. Derived from the guilty findings outlined in the SJAR, that comment is undoubtedly true. The appellant pleaded guilty to striking the SNCO twice in the head with a baseball bat with force and violence. Death is a very real possible consequence of such behavior. We also note that the SJAR specifically commented that the conspiracy to commit aggravated assault was consolidated with the conspiracy to commit robbery. Second, the SJAR clearly stated that the appellant pleaded not guilty to attempted murder and was found not guilty of that offense. Finally, the characterization of the appellant by the Chief of Staff as a "thug" is a fair characterization of the thug-like conduct to which he pleaded guilty and that is evidenced in the SJAR. The appellant seeks to rebut this comment by showing that the conduct for which he was court-martialed was an aberration. No such showing is necessary, however, because that information was already included in the extensive defense clemency request considered by the convening authority prior to taking his action and summarized meticulously by the SJA in the SJAR. That summary stated:

(1) Lance Corporal Anderson pled guilty and selected a military judge alone trial which saved the Government a considerable amount of money; (2) He has taken full responsibility for his actions and apologized for what he had done; (3) Lance Corporal Anderson is undergoing rehabilitation and self-evaluation. His defense counsel believes that this is the first sign of someone who is successfully rehabilitating himself. He has also been attending all available church services in the brig; (4) Lance Corporal Anderson is a model prisoner, and has not received any disciplinary reports since being confined; (5) His childhood was very difficult. He was born to a mother who was a drug addict and neglected him. Lance Corporal Anderson was moved from one home to another until he was adopted by the

Anderson family. His adoptive mother believes he has overcome all these bad memories and became [sic] a beautiful person; (6) Lance Corporal Anderson provides several letters and poems for your consideration. In general, he would like you to know that he is deeply sorry for what he has done and even has nightmares about the harm he caused Staff Sergeant Kern. He has accepted God as his guiding force and has changed his life. Lance Corporal Anderson wants to go back to school so that he can help others. He is extremely ashamed of himself for disgracing his family and the Marine Corps; (7) Mr. and Mrs. Anderson, his adopted parents, provide letters for your consideration asking for clemency. The defense counsel also provides their testimony from the trial. They testified about Lance Corporal Anderson's quiet, peaceful nature. Their son loved sports and was proud to be a Marine. They want you to know that this misconduct is uncharacteristic of him and that they will support him upon his release; (8) Several other letters are provided by friends and family members of Lance [sic] Anderson for your consideration. They generally describe Lance Corporal Anderson as a quiet, peaceful, and giving person. He is very close to his family and active in sports. None of these individuals would ever have imagined that he would commit these acts against another person; (9) Two videotapes with interviews of family and friends are also provided. These individuals all agree that Lance Corporal Anderson is a peaceful person, who would never have done something like this. They feel he is the type of person who would protect his family but would never look for a fight. They express their disbelief and find it hard to believe this has happened; and (10) Lance Corporal Anderson wants to lead a productive life in the future and wants to marry his fiancee and support her child. He would like to adopt her child as his own and raise the little girl the right way.

The defense did not mention any other matter that it would offer to show that the appellant's conduct was an aberration. Consequently, in view of the foregoing, the de-fense has failed to cross the threshold of showing prejudice. In addition, we find that the Chief of Staff's comments were "so trivial" as to be non-prejudicial, harmless error. *United States v. Jones*, 44 M.J. 242, 244 (1996).

■ Nonetheless, we caution SJAs that unnecessary appellate litigation can be avoided if they ensure that their SJARs are provided directly to the convening authority and not commented upon or reviewed by any member of the chain of command or other staff officer. Neither the statutory basis for the SJAR nor its implementing regulation provide for or contemplate that SJAs should share their recommendations with anyone but the convening authority. *See, e.g., United States v. Aquino*, 48 M.J. 842, 845 (N.M.Ct.Crim.App.1998) (commenting that "'job-sharing' has no place in the important post-trial process").

■ In his third assignment of error, the appellant contends that the military judge erred when he denied the defense's request for expert assistance to prepare a case for extenuation and mitigation. We disagree.

■ We review a military judge's decision to deny a defense request for expert assistance for an abuse of discretion. *United States v. Washington*, 46 M.J. 477, 480 (1997). "[A]s a matter of military due process, servicemembers are entitled to investigative or other expert assistance when necessary for an adequate defense." *United States v. Garries*, 22 M.J. 288, 290 (C.M.A. 1986). "In the usual case, the investigative, medical, and other expert services available in the military are sufficient to permit the defense to adequately prepare for trial. When an accused applies for the employment of an expert, he must demonstrate the necessity for the services." *Id.* at 290–91. This demonstration must show something more than a mere possibility of assistance from a requested expert; it must show that there exists a reasonable probability both that an expert would be of assistance to the defense and that the denial of expert assistance would result in a fundamentally unfair trial. *United States v. Kelly*, 39 M.J. 235, 237 (C.M.A.1994). "[I]t is not enough to state

that an expert would be of great assistance." *Id.* In determining whether government-funded expert assistance is necessary, we apply a three-part test: (1) why the expert assistance is needed; (2) what the expert assistance would accomplish for the accused; and (3) why the defense counsel is unable to gather and present the evidence that the expert assistant would be able to develop (*Gonzalez* factors). *United States v. Gonzalez,* 39 M.J. 459, 461 (C.M.A.1994); *United States v. Allen,* 31 M.J. 572, 623 (N.M.C.M.R. 1990) (en banc). *See also United States v. Short,* 50 M.J. 370, 376 (1999). After reviewing the defense's request and the military judge's findings on this issue, we find no abuse of discretion.

The defense requested two specific civilian experts to assist him in preparing a case in extenuation and mitigation. One was a mitigation expert, who the defense contended would serve to conduct in-depth interviews with the accused, family members, friends, and associates, and who would coordinate, document, and review potential mitigating factors. Appellate Exhibit II at 3. The other expert was a psychiatrist, who the defense contended would conduct in-depth interviews with the accused and his family in order to identify interpersonal dynamics, and who would study the accused's mental condition at the time of the offense and determine his potential for treatment and rehabilitation. *Id.* at 4. The defense stated "that the accused's mental condition **could** be a factor at trial and a licensed expert chosen by the defense **could** provide useful information which would be used by the defense at trial." *Id.* (emphasis added). In initially denying the defense request for these experts, the convening authority asserted that the services sought from the mitigation expert could be adequately performed by the detailed defense counsel and that the services sought by the psychiatric expert could be performed by psychiatrists and clinical psychologists at the base. Appellate Exhibit III at 5.

At trial, the defense renewed its request for expert assistance. In denying the request, the military judge applied the *Gonzalez* factors and determined that the defense had not met its burden of showing that the

assistance of either expert was necessary. With respect to the mitigation expert, the military judge concluded that the defense counsel could gather the same information on his own. With respect to the psychiatrist, the military judge concluded that the defense had failed to show the need for information supplemental to the R.C.M. 706 mental responsibility board that had previously been ordered. As a postscript to his ruling, the military judge offered the defense other avenues of relief: "[T]he court would entertain upon proper demonstration of a need, one, a request for assistance of appointed co-counsel or IMC in this particular case; two, a request for continuance based on the need to contact, and interview a significant number of witnesses in this particular case; or three, a request for investigative assistance from NIS or CID." Record at 26.

After the military judge's ruling, the defense counsel was provided government funding to travel from Camp Pendleton to New Jersey to interview mitigation witnesses, and he was granted a 17–day continuance to better prepare his case. At trial, the defense presented a thorough sentencing case, which included the live testimony of the appellant's adoptive parents, the videotaped testimony of numerous close family friends, a prisoner progress report, numerous letters from family and friends, and both a written and oral unsworn statement from the appellant.

 Based on the foregoing, we find that the military judge properly determined that the defense had failed to show the necessity for expert assistance and did not abuse his discretion. With respect to the mitigation expert, the defense had other alternatives to gather and present the evidence that the expert assistance would develop, and as exhibited at trial, the defense successfully exercised those alternatives. With respect to the psychiatrist, although we concede that an R.C.M. 706 board would not necessarily be an adequate substitute for expert psychiatric assistance, here the defense failed to articulate a minimal showing of need. *See United States v. Ingham,* 42 M.J. 218, 226 (1995); *United States v. Anderson,* 47 M.J. 576, 579 (N.M.Ct.Crim.App.1997). To require psychiatric assistance based on mere conjecture

"would be tantamount to a judicial license for a paid fishing expedition." *United States v. Thomas,* 33 M.J. 644, 648 (N.M.C.M.R.1991). In addition, we note that the defense asked only for a specific psychiatrist. It is well-established that an accused is not entitled to an expert of his own choosing. *United States v. Burnette,* 29 M.J. 473, 475 (C.M.A. 1990). In denying the defense's initial request for expert assistance, the convening authority informed the defense that the requested assistance could be performed by psychiatrists and clinical psychologists at the base. The defense never opted to pursue this alternative.[1] As a result, it forfeited its right to such assistance. *Id.* at 476. After reviewing the entire record, we conclude that the denial of expert assistance did not result in a fundamentally unfair trial. *See Kelly,* 39 M.J. at 237–38.

In his final assignment of error, the appellant, citing *United States v. Gorski,* 47 M.J. 370 (1997), contends that the application to his case of the automatic forfeiture and re- duction provisions of Articles 57(a) and 58b, UCMJ, violated the *ex post facto* clause of Article I, § 9 of the Constitution. The Government concurs, as do we. The problem and remedy, however, are administrative in nature and do not affect the approved findings or sentence.

Accordingly, we affirm the findings and sentence, as approved on review below. The record of trial is returned to the Judge Advocate General of the Navy for any appropriate administrative action required regarding the application of Articles 57(a) and 58b, UCMJ.

Senior Judge LEO and Senior Judge TROIDL concur.

---

1. At the defense's request, the R.C.M. 706 board was originally tasked to explore areas beyond those necessary for determining the accused's mental responsibility. Appellate Exhibit XI at 3. On the day of the R.C.M. 706 board, however, the R.C.M. 706 order was modified at the defense's request to eliminate inquiry into those additional areas. *Id.* After the defense received the R.C.M. 706 board report, it never renewed its request for expert psychiatric assistance.