# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Staff Sergeant SCOTT K. PHEASANT, JR.
## United States Air Force

## ACM S32237

## 16 September 2015

Sentence adjudged 19 March 2014 by SPCM convened at Maxwell Air Force Base, Alabama.  Military Judge:  Ronald A. Gregory.

Approved Sentence:  Bad-conduct discharge and forfeiture of $500.00 pay per month for 12 months.

Appellate Counsel for the Appellant:  Major Anthony D. Ortiz.

Appellate Counsel for the United States:  Major Mary Ellen Payne and Gerald R. Bruce, Esquire.

Before

MITCHELL, TELLER, and BENNETT
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

BENNETT, Judge:

At a special court-martial composed of officer members, the appellant was found guilty of one charge and two specifications of assault consummated by battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928, and sentenced to a bad-conduct discharge, forfeiture of $500.00 pay per month for 12 months, and hard labor without confinement for 3 months. [1]  The convening authority approved the forfeiture of $500.00 pay per month for 12 months and the bad-conduct discharge.

---

[1] The court-martial order incorrectly states that sentence was adjudged by officer and enlisted members.  We order the promulgation of a corrected court-martial order.

On appeal, the appellant contends that (1) a victim impact statement submitted to the convening authority contained matter that was inappropriate for his consideration and the staff judge advocate (SJA) erred by not preventing the convening authority from considering it, (2) the SJA erred by not addressing the allegations of legal error contained in this victim impact statement, and (3) the evidence is both legally and factually insufficient to support his findings of guilt.[2] We disagree and affirm the findings and the sentence as adjudged.

*Background*

The appellant was convicted of two specifications that arose out of separate physical confrontations that he had with LP and KC. The appellant was acquitted of other specifications, including an alleged assault on LC, the child he shared with KC.

LP was the appellant's wife. During a confrontation with LP, the appellant picked up dog feces with his hand and shoved it in her face. Before he met and married LP, the appellant had a relationship with KC. During a confrontation with KC, the appellant struck her in the face. At the court-martial, the defense theory was that the appellant's actions against both women were legally justified as self-defense.

During the clemency phase, both LP and KC provided victim impact statements to the convening authority. LP, who was still the appellant's wife at the time, largely defended her husband and asked the convening authority to grant him clemency. KC, on the other hand, asked the convening authority to not grant clemency, arguing that the appellant had received only "a slap on the wrist." These victim impact statements were received by the accused and his trial defense counsel, and trial defense counsel submitted a response to these statements that the convening authority considered.

Additional facts necessary to resolve the assigned errors are included below.

*Victim Impact Statements*

The appellant's first and second issues concern KC's victim impact statement. Because they are closely related, we will consider these issues together.

Whether post-trial processing was completed properly is a question of law, which this court reviews de novo.[3] *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim.

---

[2] The appellant raises the third issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] The government argues that we should employ a plain error standard of review because the appellant waived the argument that KC's victim impact statement violated Article 60, UCMJ, 10 U.S.C § 860, by failing to object to the statement on those specific grounds. The government acknowledges that the appellant, in his second clemency submission, objected to KC's victim impact statement. However, the government argues that because the appellant did not specifically mention the National Defense Authorization Act (NDAA) for Fiscal Year 2014, Pub. L. No.

App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). When reviewing post-trial errors, we recognize the convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono*, 26 M.J. 240, 243 n.3 (C.M.A. 1988)) (internal quotation marks omitted). The convening authority, not a court of criminal appeals, is empowered to grant clemency for equitable reasons. *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010). "Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents 'some colorable showing of possible prejudice.'" *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)); *see also United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005).

Article 60, UCMJ, 10 U.S.C § 860, provides the statutory framework by which a convening authority takes action on the findings and sentence of a court-martial. It is during this post-trial process, also known as the clemency phase, that relief in the form of a set aside of findings or a sentence reduction may take place. In their clemency submissions to the convening authority, the appellant and his trial defense counsel asked the convening authority to set aside the findings and sentence in this case.

Article 60, UCMJ, was amended to include a new subsection (d) that authorized the submission of victim impact statements. *See* National Defense Authorization Act (NDAA) for Fiscal Year 2014, Pub. L. No. 113-66, § 1706, 127 Stat. 960–61 (2013).[4] The appellant objects to some of the content in KC's victim impact statement because, in his opinion, it refers to matter that was not relevant either because it did not pertain to the offenses of which KC was a victim or because the information referred to offenses of which the appellant was found not guilty. In support of his argument, the appellant attempts to draw a link between the definition of "victim" provided by Article 60(d)(5), UCMJ and Rule for Courts-Martial (R.C.M.) 1001(b)(4), the rule governing aggravating evidence that trial counsel may present during the presentencing phase of a court-martial. Essentially, the appellant argues that the R.C.M. 1001(b)(4) requirement that aggravating evidence be "directly relat[ed] to or resulting from the offenses of which the accused has been found guilty" should apply as a limitation on what may be introduced through victim impact statements submitted to a convening authority after trial.

---

113-66, § 1706, 127 Stat. 960–61 (2013), or its amendments to Article 60, UCMJ, 10 U.S.C. § 860, that therefore the appellant has waived this argument on appeal. We disagree and adopt the de novo standard of review for this appeal.

[4] The NDAA for Fiscal Year 2014 became law on 26 December 2013. The government, in its answer to the appellant's assignment of error, incorrectly argues that this amendment did not apply to the appellant because it was not effective at the time the appellant committed his assault against KC. However, the government cites a provision of the NDAA for Fiscal Year 2014 that provided effective dates for other amendments to Article 60, UCMJ. The government appears to refer to Section 1702(d), though they cite Section 1706, of the NDAA for Fiscal Year 2014. *See* Pub. L. No. 113-66, § 1702(d), 127 Stat. 958 (2013). Section 1706, the section that specifically addresses victim impact statements, does not contain a provision establishing an effective date, thus the amendment authorizing victims to submit impact statements was effective immediately upon the enactment of the legislation.

Article 60, UCMJ, does not address what may be included in a victim impact statement; it merely states,

> In any case in which findings and sentence have been adjudged for an offense that involved a victim, the victim shall be provided an opportunity to submit matters for consideration by the convening authority or by another person authorized to act under this section before the convening authority or such other person takes action under this section.

Article 60(d)(1), UCMJ.

Article 60(d)(5), UCMJ contains a definition that describes *who* is permitted to provide a victim impact statement during the post-trial process. A "victim" is defined as "a person who has suffered a direct physical, emotional, or pecuniary loss as a result of a commission of an offense under this chapter (the Uniform Code of Military Justice)." KC qualifies as a victim under Article 60(d)(5), UCMJ, and the appellant does not object to the fact that she submitted a victim impact statement under this relatively new statutory provision.

R.C.M. 1001(b)(4), on the other hand, is a rule governing *what* may be presented in aggravation during the presentencing phase of a trial. During the presentencing proceedings, trial counsel

> may present evidence as to any aggravating circumstances *directly relating to or resulting from the offenses of which the accused has been found guilty*. Evidence in aggravation includes, but is not limited to, evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused and evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense.

R.C.M. 1001(b)(4) (emphasis added).

The convening authority would have been free to consider KC's victim impact statement even before Article 60, UCMJ, was amended. The addition of subsection (d)(5) did not open the aperture on what a convening authority could consider in clemency.[5] Both the UCMJ and the R.C.M. already gave a convening authority broad

---

[5] *See* Zachary D. Spilman, *Not Helping: How Congressional Tinkering Harms Victims During the Post-Trial Phase of a Court-Martial*, 114 COLUM. L. REV. SIDEBAR 70 (2014).

discretion to determine what to consider during the clemency process. *See* R.C.M. 1107(b).[6]

The appellant objects to some of the content of KC's victim impact statement. Specifically, he objects to references to his harming their child, her claim that she was prevented from testifying to the complete story, and implications that the appellant harmed others. However, these are just snippets of the statement that KC submitted. To put them into perspective, they must be viewed in the context of her entire statement.

It is true that KC made limited—almost off-hand—mention of the fact that she had trouble trusting others "when it concern[ed] [her] and [her] child's safety" and implied that the appellant would have been convicted for his alleged assault on LC had she been able to testify without being made to feel like "it was [her] fault, or . . . like [she was] a liar." Without identifying anyone in particular, KC also suggested that "others" were impacted by the appellant's offenses. However, the substance of her victim impact statement was overwhelmingly about the impact the appellant's actions had on her. Thus, taken as a whole, the content of her victim impact statement was appropriate under these circumstances. Moreover, the convening authority did not approve the appellant's sentence to hard labor without confinement. Regardless of the reasons why, the appellant received clemency—the thing that KC so passionately argued against.

Action was taken in this case on 6 May 2014. At the time, Article 60(c)(1), UCMJ, stated "[t]he authority . . . to modify the findings and sentence of a court-martial is a matter of command prerogative involving the sole discretion of the convening authority."[7] Before taking action, a convening authority must consider the result of trial, staff judge advocate recommendation (SJAR), matters submitted by the accused under R.C.M. 1105 or, if applicable, matters submitted under R.C.M. 1106(f). R.C.M. 1107(b)(3)(A). Additionally, a convening authority may consider "[*s*]*uch other matters as the convening authority deems appropriate.* However, if the convening authority considers matters adverse to the accused from outside the record, with knowledge of which the accused is not chargeable, the accused shall be notified and given an opportunity to rebut." R.C.M. 1107(b)(3)(B)(iii) (emphasis added).

"Congress gave the convening authority the important, quasi-judicial power to review the judgment and sentence of a court-martial." *United States v. Cornwell*, 49 M.J. 491, 494 (C.A.A.F. 1998). An SJA may not provide a convening authority with

---

[6] Also, when KC submitted her victim impact statement, both the Department of Defense and the Air Force had pre-existing regulations that expressly provided for the right of victims to submit statements to a convening authority prior to action. *See* Department of Defense Instruction (DODI) 1030.2, *Victim and Witness Assistance Procedures*, Enclosure 5 (4 June 2004); Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 9.9 (6 June 2013).

[7] Section 1702(b) of the NDAA for Fiscal Year 2014 eliminated the unlimited prerogative and discretion of commanders taking action on the findings and sentence of a court-martial. Pursuant to Section 1702(d) of the NDAA for Fiscal Year 2014, these changes took effect on 24 June 2014 and applied to offenses committed on or after that date. Thus, these changes have no bearing on the issues before this court in the case at bar.

information known to be unreliable or misleading. *United States v. Mann*, 22 M.J. 279, 280 n.2 (C.M.A. 1986). Therefore, SJAs and their staff should remain vigilant, particularly when reviewing materials submitted by victims who may still be emotional and justifiably nonobjective. Victims may not understand the issues that can be created when the post-trial process goes awry. Thus, a prudent SJA may decide it is necessary to supplement the advice contained in an SJAR, depending on the content of a victim impact statement, or take other action to prevent an accused from being unfairly prejudiced during the clemency phase.

However, in the case at bar, the SJA did not err in providing KC's complete victim impact statement to the convening authority. There is no reason to question the reliability of the information that KC presented, nor was it misleading. In accordance with R.C.M. 1107(b)(3)(B)(iii), the appellant and his trial defense counsel were served with copies of KC's statement, and the trial defense counsel responded with a full-throated rebuttal.

Based on his reading of R.C.M. 1106(d)(4), the appellant argues, in the alternative, that the SJA was required to address KC's and trial defense counsel's allegations as legal error.[8] Under R.C.M. 1106(d)(4), an SJA is obligated to

> state whether, in the staff judge advocate's opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate. The response may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal error is not required.

R.C.M. 1105 is the rule that governs what may be submitted by an accused for a convening authority's consideration prior to taking action on the accused's findings or sentence. These submissions are not subject to Military Rules of Evidence and may include "[a]llegations of errors affecting the legality of the findings or sentence." R.C.M. 1105(b)(2)(A). In the case at bar, the SJA was not obligated to respond to any claim of legal error that KC may have made as her submission was not made pursuant to R.C.M. 1105.

Moreover, we find that trial defense counsel did not raise legal error within the meaning of R.C.M 1105(b)(2)(A). The thrust of both of the appellant's petitions for clemency was that he acted in self-defense and KC lacked credibility. Leaving it up to the convening authority to reconsider his self-defense claim and weigh KC's credibility,

---

[8] This is the appellant's second of three issues.

trial defense counsel made fact-based arguments; at no point did he argue that there was a legal error. The SJA was not required to respond to legal error where none was asserted.[9]

Prior to taking action, pursuant R.C.M. 1107(b)(3)(B)(iii), the convening authority was free to consider whatever matter he deemed appropriate. In accordance with this governing R.C.M., the appellant was given notice of the material the convening authority had for consideration and an opportunity to rebut, which appellant's trial defense counsel did. We find that KC's victim impact statement is almost entirely about the impact of the appellant's crime on her and that, under the circumstances of this case, it was appropriate for the convening authority to consider this statement in its entirety. Thus, the SJA did not err by presenting KC's victim impact statement, in its entirety, to the convening authority. Furthermore, we find that neither KC's nor the trial defense counsel's post trial submissions alleged legal error requiring a response by the SJA.

*Factual and Legal Sufficiency[10]*

On appeal, the appellant argues that his convictions are legally and factually insufficient because the evidence shows that he acted in self-defense and that there was "possible collusion" between LP and KC. We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

When police officers arrived at appellant's home on the day that he assaulted his wife with dog feces, they found broken furniture and LP crying with injuries to her lower lip and chest. When they questioned the appellant, he admitted that he put dog feces in

---

[9] The staff judge advocate (SJA) did comply with his requirement to state whether corrective action was required, by stating that none was required. *See* R.C.M. 1106(d)(4).

[10] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

LP's mouth during a physical struggle that ensued after he pursued LP into a bedroom. The appellant also admitted that he shoved his wife and smeared dog feces on her face when he met with a family advocacy counselor at Maxwell Air Force Base, Alabama. He told her that they had a physical altercation and that LP scratched him. *Id.* KC testified that the appellant punched her in the face as she reached into his car to get a lighter out of his glove compartment. The two had been arguing, but it was not particularly heated. After he punched KC, the appellant apologized to her. There was evidence that the appellant kept a knife in his glove compartment and that KC knew it was there. The appellant expressed to KC that he feared for his life because she was reaching for his glove compartment. It is not clear whether appellant expressed this concern before or after he punched KC in the face.

In closing, trial defense counsel argued that the appellant acted in self-defense when he shoved dog feces in LP's face and punched KC in the face. Trial defense counsel also vigorously attacked KC's credibility as a witness during argument on findings.

We have reviewed the record of trial, paying particular attention to the evidence and reasonable inferences that can be drawn therefrom, including testimony from all the witnesses. In viewing the evidence in the light most favorable to the government, we conclude that a rational factfinder could have found beyond a reasonable doubt that the appellant was not acting in self-defense and did commit the offenses he was charged with. Having reviewed the entire record and making allowances for not personally observing the witnesses, we ourselves are convinced that the appellant was not acting in self-defense and is guilty beyond a reasonable doubt.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court