Douglas A. ANDERSON, Jr.,

v.

The UNITED STATES.

No. 01–510C.

United States Court of Federal Claims.

Dec. 12, 2002.

Douglas A. Anderson, Jr., Ft. Leavenworth, KS, plaintiff pro se.

Phyllis Jo Baunach, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for the defendant.

## OPINION

YOCK, Senior Judge.

This military pay case is before the Court on the Defendant's Motion to Dismiss and on the plaintiff's motions for summary judgment and for discovery. For the reasons set forth below, the defendant's motion is granted in

part and denied in part, the plaintiff's motion for summary judgment is granted in part and denied in part, and the plaintiff's motion for discovery is denied.

*Background*

On November 9, 1992, the plaintiff enlisted in the regular component of the United States Marine Corps for a period of four years. Pursuant to his enlistment agreement, the plaintiff was to serve an additional four years in a reserve component after the expiration of his four-year term of active duty. On September 26, 1996, a general court-martial convicted the plaintiff of conspiracy, unauthorized absence, and robbery (all such offenses having been committed on or before February 7, 1996) and sentenced the plaintiff to dishonorable discharge, confinement for 20 years, forfeiture of all pay and allowances, and reduction from pay grade E–3 to pay grade E–1. The Government terminated the plaintiff's pay and allowances on October 10, 1996, pursuant to 10 U.S.C. § 857.[1] On December 27, 1996, the convening authority approved the findings and the sentence of the court-martial.[2] The Navy–Marine Corps Court of Criminal Appeals affirmed the findings and the sentence, both on the initial appeal[3] and upon reconsideration.[4] On further appeal, the Court of Appeals for the Armed Forces affirmed the court-martial conviction, but set aside the convening authority's action on the sentence, concluding that the convening authority had reviewed new matter that the plaintiff had not been given the opportunity to rebut. The Court of Appeals for the Armed Forces

ordered the record of trial to be submitted to a different convening authority for action on the sentence, thus affording the plaintiff an opportunity for sentence relief.[5]

The plaintiff filed his Complaint in this Court on September 4, 2001. The plaintiff contends that when his four years of active service expired, on December 5, 1996,[6] he was automatically transferred to inactive reserve status. Because the Government did not then recall him to active duty for the purpose of having the convening authority take action on the sentence imposed by the court-martial, the plaintiff theorizes that an implied contractual extension of his active duty service occurred. The plaintiff asserts that, because he has been retained on active duty for the convenience of the Government, he is entitled to active duty pay and allowances until such time as the second convening authority takes valid action on the court-martial's sentence. The plaintiff seeks military back pay from October 10, 1996, until such time that a valid convening authority action is executed, "illegal confinement" pay, and "penalty interest," totaling more than $2 million. In his "Combined Motion in Reply to Defendant's Motion to Dismiss, Motion for Summary Judgment, and Motion for 'Discovery' " ("Pl.'s Mot."), the plaintiff also requests correction of his military records to reflect that he was in an "inactive reserve" status as of his end of active service date. In the event that his motion for summary judgment is denied, the plaintiff requests that the Court order discovery of certain materials allegedly needed for "perfecting his Com-

---

1. All citations herein to the United States Code are to the 1994 version unless otherwise specified. On the date of conviction, the cited provision provided that forfeitures were to take effect on the earlier of "the date that is 14 days after the date on which the sentence is adjudged," or "the date on which the sentence is approved by the convening authority." 10 U.S.C. § 857(a)(1) (1994 & Supp. II 1996).

2. "Convening authority" is the term assigned to an officer empowered to convene a general court-martial pursuant to 10 U.S.C. § 822. After trial, the convening authority must take action on the sentence of a court-martial and "may approve, disapprove, commute, or suspend the sentence in whole or in part." 10 U.S.C. § 860(c)(2).

3. *United States v. Anderson,* No. 97–00058, 1999 WL 350826 (N.M.Ct.Crim.App. May 27, 1999).

4. *United States v. Anderson,* 50 M.J. 856 (N.M. Ct.Crim.App. June 24, 1999).

5. *United States v. Anderson,* 53 M.J. 374 (C.A.A.F. 2000).

6. As explained *infra,* the plaintiff's end of active service date was adjusted from November 9, 1996, to December 5, 1996, to reflect additional service time owed by the plaintiff to compensate for a period of unauthorized absence. Consequently, the Court deems all references made by the parties to the plaintiff's end of active service date to mean December 5, 1996, as opposed to November 9, 1996.

plaint." In another filing entitled "Plaintiff's Response to the Defendants Below Motions and his Movement for Summary Judgment" ("Pl.'s Resp."), the plaintiff alternatively asserts that he is entitled to placement in the inactive reserve as of his end of active service date and to pay and allowances statutorily mandated for certain members of reserve components.

During the pendency of this action, the Government issued a check to the plaintiff in the amount of $2,386, which the plaintiff twice refused to accept. Pursuant to an order of this Court, the defendant filed "Defendant's Status Report" on September 13, 2002. In that filing, the defendant explains that it had asked the Defense Finance and Accounting Service ("DFAS") to review the plaintiff's claim. According to the defendant, the DFAS determined that, because the plaintiff was required to make up time to compensate for a period of unauthorized absence, the plaintiff's end of active service date should have been adjusted from November 9, 1996, to December 5, 1996. In addition, the DFAS determined that, pursuant to *United States v. Gorski*, 47 M.J. 370 (C.A.A.F.1997),[7] the plaintiff was entitled to pay and allowances from October 10, 1996, until his adjusted end of active service date. The DFAS calculated that $2,386 in pay and allowances was owed to the plaintiff, as an E–3, for the period of October 10, 1996, through December 5, 1996, and issued a check in that amount to the plaintiff. Because the Defendant's Status Report and the calculations appended thereto constituted matters outside the pleadings, the Court informed the parties in an Order dated September 17, 2002, that the defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") would be treated as one for summary judgment and instructed the plaintiff to respond accordingly.

In the Plaintiff's Response to the Defendant's Status Report, the plaintiff does not dispute that December 5, 1996, is his properly adjusted end of active service date. The plaintiff also does not dispute that $2,386 is the appropriate calculation of E–3 pay and allowances for the period of October 10, 1996, through December 5, 1996. Instead, the plaintiff reiterates his legal conclusion that he is statutorily entitled to pay and allowances "as a reservist on active-duty until 27 December 1996, the date of the Convening Authority's action, pursuant to 37 U.S.C. 206 and 10 U.S.C. 857." (Pl.'s Resp. to the Def.'s Status Report ¶ 3.)

The defendant seeks dismissal of the Complaint for lack of jurisdiction, pursuant to RCFC 12(b)(1), or for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). As previously mentioned, the defendant's RCFC 12(b)(6) motion is treated as a motion for summary judgment. The plaintiff seeks summary judgment pursuant to RCFC 56(a). Oral argument was not requested and is deemed unnecessary.

*Discussion*

I. *Standards of Review*

In assessing the Defendant's Motion to Dismiss, the Court accepts as true all undisputed allegations of fact asserted by the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). In addition, the Court holds the *pro se* plaintiff's pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The burden of proving that this Court has jurisdiction over the plaintiff's claims, however, rests with the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991). If the plaintiff pleads sufficient facts to meet the jurisdictional burden, a motion to dismiss for failure to state a claim upon which relief can be granted may still properly intercede and prevent trial if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss for failure to state a claim

---

**7.** Examined more fully in Section V, *infra*.

is treated as a motion for summary judgment if matters outside the pleadings are presented to and not excluded by the court. RCFC 12(b).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Material" facts are those that would make a difference in the outcome of a case under applicable law. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. In reviewing a motion for summary judgment, any disputes over material facts are resolved in favor of the nonmovant. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir.1987). "If the evidence [of the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). Unsupported assertions or conclusory allegations are not sufficient to withstand a motion for summary judgment. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed.Cir.1985).

## II. *Jurisdiction*

Like all Federal courts, the United States Court of Federal Claims is a court of limited jurisdiction. The Tucker Act, 28 U.S.C. § 1491, provides the basic governmental consent for suits to be brought against the Government in this Court. The statute provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). This statute does not create any substantive right enforceable against the United States for money damages; rather, it "merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Accordingly, in order to maintain a suit in this Court, a claimant must look beyond the Tucker Act and identify a contract or some constitutional provision, Federal statute, or regulation which mandates the payment of money to the claimant. *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967).

Among other provisions, the plaintiff cites 37 U.S.C. § 204, a statute that mandates payment to members of the uniformed services who are on active duty. If the Government improperly terminated the plaintiff's statutory right to active duty pay and allowances while the plaintiff was in an active duty status, then 37 U.S.C. § 204 serves as a basis for Tucker Act jurisdiction. *See Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir. 1995) (asserting that, if the Government improperly discharges an active duty servicemember, the servicemember's statutory right to pay is not terminated and thus 37 U.S.C. § 204 serves as a basis for Tucker Act jurisdiction). In addition, the plaintiff cites 37 U.S.C. § 206(a), which mandates payment to members of reserve components for, *inter alia*, periods of regular training. That statute also may serve as the basis for Tucker Act jurisdiction if the Government improperly failed to pay the plaintiff at a time when the plaintiff performed regular training or other duties as a member of a reserve component.

When properly pled, correction of military records and back pay both "fall squarely within the [Court of Federal Claim's] Tucker Act jurisdiction." *Matias v. United States*, 923 F.2d 821, 823 (Fed.Cir.1990). *See, e.g., Liggan v. United States*, 52 Fed.Cl. 395 (2002); *Paalan v. United States*, 51 Fed.Cl. 738 (2002); *Brown v. United States*, 42 Fed. Cl. 139 (1998), *aff'd* 215 F.3d 1347 (Fed.Cir. 1999); *Johnson v. United States*, 41 Fed.Cl. 190 (1998); *Reed v. United States*, 23 Cl.Ct. 517 (1991) (all cases in which the Court exercised jurisdiction over claims for correction of military records and back pay, even though many of the allegations ultimately

failed to state claims upon which relief could be granted). The determination as to this Court's jurisdiction over any of the plaintiff's claims in the instant case depends upon whether or not any of the cited money-mandating statutes applies to the plaintiff. That determination, in turn, depends upon the plaintiff's duty status during the period of time covered by his Complaint.

### III. *Duty Status*

■ The plaintiff has been under continuous military jurisdiction since entering into active duty service on November 9, 1992. Article 2 of the Uniform Code of Military Justice provides for military jurisdiction over, *inter alia,* "[m]embers of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment," and over "[p]ersons in custody of the armed forces serving a sentence imposed by a court-martial." 10 U.S.C. § 802(a)(1), (7). Since September 27, 1996, the plaintiff has been in the custody of the armed forces serving a sentence imposed by a court-martial. Since December 5, 1996, he also has been awaiting discharge after expiration of his term of enlistment. Accordingly, he has been, and continues to be, "subject to the rules, discipline and jurisdiction of the [Marine Corps] and squarely within the provisions of Article 2 of the Uniform Code of Military Justice." *Dickenson v. Davis,* 245 F.2d 317, 319 (10th Cir.1957).

Although the plaintiff does not contest that he is subject to military jurisdiction, he contends that the convening authority's action, dated December 27, 1996, approving the court-marital sentence, was invalid and thus did not terminate his entitlement to pay and allowances. The plaintiff theorizes that his active duty enlistment expired prior to the execution of the convening authority's action and that he was automatically transferred to inactive reserve status upon expiration of his adjusted term of active duty on December 5, 1996. The plaintiff concludes that the convening authority's approval of his sentence violated section 0123 of the Manual of the Judge Advocate General (the "JAG Manual"),

which prohibits sentencing to confinement or the service of "punishment of any restraint on liberty during a period other than a period of inactive duty training or active duty." The plaintiff further contends that, once automatically transferred to the inactive reserves, the Government did not recall or involuntarily extend him on active duty for purpose of punishment by confinement by a court-martial, thus violating 10 U.S.C. § 802(d)(1).[8]

Despite his assertions to the contrary, however, the plaintiff was not automatically transferred to inactive reserve status when his term of active duty expired on December 5, 1996. By statute, "[a] member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him * * *." 10 U.S.C. § 1168. Just as "the mere expiration of enlistment does not effect an automatic discharge," *Garrett v. United States,* 625 F.2d 712, 713 (5th Cir.1980), neither does it effect an automatic transfer to the inactive reserves. *See Paalan,* 51 Fed.Cl. at 738 (concluding that no automatic transfer to Fleet Reserve occurred at the end of plaintiff's active obligated service). The plaintiff has not alleged that he has received either a discharge certificate or a final accounting of pay; indeed, the plaintiff expressly agrees that the "[p]laintiff was not discharged from the armed forces, under 10 U.S.C. § 1168(a)." (Pl.'s Resp. ¶ 6.)

The plaintiff, then, is a person who has remained under continuous military jurisdiction and who has never been released or discharged from active duty. His status is that of a person in custody of the armed forces serving a sentence imposed by a court-martial. His status is also that of a person awaiting discharge after expiration of his enlistment. However, because no authority has affirmatively released him from active duty or assigned him to a component of the inactive reserves, his status is not that of an inactive reservist. Consequently, as amplified below, the plaintiff cannot maintain any

---

8. "A member of a reserve component who is not on active duty * * * may be ordered to active duty involuntarily for the purpose of * * * trial by court-martial." 10 U.S.C. § 802(d)(1).

claim that relies upon his erroneous assertion that he has been transferred to inactive reserve status.

## IV. *Plaintiff's Claims Based Upon Status as an Inactive Reservist*

The plaintiff's allegations that the convening authority's approval of his court-martial sentence violated JAG Manual section 0123 and 10 U.S.C. § 802(d)(1) do not state claims over which this Court may exercise jurisdiction. The relevant portions of the referenced provisions require a reserve component member not on active duty to be ordered to active duty before he may be tried by a court-martial and sentenced to confinement. JAG Manual section 0123 and 10 U.S.C. § 802(d)(1) are inapplicable to the plaintiff because the plaintiff was on active duty when he was tried by court-martial and sentenced to confinement. The plaintiff likewise cannot maintain a claim for back pay pursuant to 37 U.S.C. § 206(a)-that provision sets forth pay entitlements for members of the National Guard and reserve components of the armed forces, not servicemembers in active duty status. *See Hunt v. United States*, 52· Fed. Cl. 810, 813 (2002) (asserting that "[s]ection 206 only mandates payment to reservists and members of the National Guard * * *."). Plaintiff's final reserve-related citation, 10 U.S.C. § 684(a)(2) [9], is equally unavailing, because it also applies only to certain members of the reserves and not to servicemembers on active duty. Plaintiff's request for correction of his military record to reflect an inactive reserve status also lacks merit, because the plaintiff has not identified any legal authority that mandates his reclassification as an inactive reservist.

As discussed above, at no time relevant to his Complaint has the plaintiff been in an inactive reserve status. None of the statutes applicable to members of reserve components relied upon by the plaintiff mandate the payment of money to servicemembers who are not members of a reserve component. Because the plaintiff is not a member of a reserve component, this Court lacks

subject matter jurisdiction over all claims that are based upon the plaintiff's faulty premise that he was automatically transferred to inactive reserve status at the expiration of his term of enlistment.

## V. *Claims for Back Pay Under Active Duty Pay Statutes*

Because the plaintiff has not been in a reserve status at any time relevant to his Complaint, any claim for back pay must be based on the plaintiff's alternative argument that he is entitled to active duty pay and allowances. The plaintiff alleges that he is entitled to back pay from October 10, 1996, to the present because his enlistment contract was involuntarily extended and because he has been retained on active duty for the convenience of the Government.

■ As an initial matter, any reliance by the plaintiff upon his enlistment contract (or any alleged constructive extension thereof) as evidence of entitlement to active duty pay is misplaced. It has long been settled that there is no contractual right to·military pay-such entitlement derives solely from statutory mandates. *Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). Pursuant to statute, members of the armed forces on active duty generally are entitled to pay and allowances commensurate with their pay grade. 37 U.S.C. § 204(a)(1). As illustrated by the plaintiff's circumstances, however, a forfeiture pursuant to a court-martial sentence or the expiration of a term of enlistment may alter the general rule.

To facilitate application of relevant statutes to the plaintiff's claims, this Court divides the Complaint into two periods: (1) from October 10, 1996 (the date that forfeiture of the plaintiff's pay and allowances began pursuant to the sentence of the court-martial), to December 5, 1996 (the adjusted date of expiration of the plaintiff's four-year term of enlistment); and (2) from December 6, 1996, to the present.

---

9. Recodified at 10 U.S.C. § 12316(a) by Pub.L. No. 103–337, 108 Stat. 2992 (1994). By its terms, the provision applies only to "a Reserve * * * who because of his earlier military service

is entitled to a pension, retired or retainer pay, or disability compensation." 10 U.S.C § 12316(a).

## A. *October 10, 1996, to December 5, 1996*

On September 26, 1996, a court-marital convicted the plaintiff of conspiracy, unauthorized absence, and robbery and sentenced him to a dishonorable discharge, confinement for 20 years, forfeiture of all pay and allowances, and reduction from pay grade E–3 to pay grade E–1. On October 10, 1996, the Government effectuated the forfeiture by terminating the plaintiff's pay and allowances in accordance with 10 U.S.C § 857. The initial convening authority approved the findings and the sentence on December 27, 1996.

The operative forfeiture provision, 10 U.S.C. § 857, was amended in February 1996. Prior to the revision, the statute provided that "[n]o forfeiture may extend to any pay or allowances accrued before the date on which the sentence is approved by the [convening authority]." 10 U.S.C. § 857(a). The amended statute provides that "any forfeiture of pay or allowances or reduction in grade that is included in a sentence of a court-martial takes effect on the earlier of- (A) the date that is 14 days after the date on which the sentence is adjudged; or (B) the date on which the sentence is approved by the convening authority." 10 U.S.C. § 857(a)(1) (1994 & Supp. II 1996). Congress determined that the amended provision was to "apply to a case in which a sentence is adjudged by a court-martial on or after the first day of [April 1996]." Pub.L. No. 104–106, § 1121(b), 110 Stat. 462 (1996). In accordance with law as it existed at the time, the Government properly terminated the plaintiff's pay and allowances as of October 10, 1996 (14 days after the date on which the sentence of the court-martial was adjudged).

The plaintiff alleges, however, that the "application of the amended version of Article 57, UCMJ, an amended [sic] which occurred after the UCMJ offenses were committed, has had a materially prejudicial ex post facto effect because * * * the defendant withheld from Plaintiff pay and allowances as mandated by Acts of Congress from 10 October 1996 through 27 December 1996." (Pl.'s Mot. ¶ 9.) Although not cited in the Complaint, the plaintiff apparently bases this theory on the holding of *Gorski*. In *Gorski*, the United States Court of Appeals for the Armed Forces ruled that application of the revised forfeiture provision "to any accused person tried for offenses committed before [April 1, 1996,] who received, from a general court-marital, a sentence of confinement for more than 6 months," has an "ex post facto effect in violation of Article I, § 9, of the Constitution." [10] *Gorski*, 47 M.J. at 371.

The circumstances of the plaintiff in the instant case fall squarely within the holding of *Gorski*. The plaintiff was tried for offenses committed prior to April 1, 1996, and was sentenced by a general court-martial to confinement for more than six months. According to *Gorski*, application of the revised forfeiture provision to the plaintiff was constitutionally impermissible. Pursuant to *Gorski*, forfeiture of the plaintiff's pay and allowances should have occurred on December 27, 1996, in accordance with the forfeiture provision that was in effect when the plaintiff committed the offenses.

■ While mere application of the *Gorski* holding to the plaintiff would seem to entitle the plaintiff to payment of his E–3 pay and allowances from October 10, 1996, through December 26, 1996, an intervening event occurred that truncates the plaintiff's claim: the plaintiff's term of enlistment expired. As the Court of Federal Claims and its predecessor court have enunciated several times, when a servicemember's enlistment expires while in confinement pursuant to a court-martial sentence that is "neither overturned nor set aside, he is not entitled to receive pay after his [date of expiration of enlistment]." *Knight v. United States*, 26 Cl.Ct. 328, 330 (1992). *See also Reed*, 23 Cl.Ct. at 520 (asserting that " 'if a member is confined serving court-martial sentence when the enlistment expires, pay and allowances ends on the date the enlistment expires unless the sentence is completely overturned or set aside' ") (quoting Department of Defense Pay Manual, paragraph 10361); *Johnson*, 41 Fed. Cl. at 194 (same). Although the Court of Appeals for the Armed Forces set aside the convening authority's action on the plaintiff's sentence, the findings and sentence of the

---

**10.** "No Bill of Attainder or ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3.

court-martial have not been overturned or set aside by any authority. On his end of active service date, December 5, 1996, the plaintiff was confined, serving a court-martial sentence which has not been overturned or set aside. Accordingly, the plaintiff is due pay and allowances beyond October 10, 1996, under the holding of *Gorski*, but only through the date of expiration of his term of active duty enlistment, December 5, 1996, in accordance with *Knight, Reed,* and *Johnson.*

■ Because the parties agree that the plaintiff's military pay and allowances were terminated on October 10, 1996 (Compl. at 4, Def.'s Reply at 3), and there is no dispute that the plaintiff's adjusted end of active service date is December 5, 1996 (Def.'s Status Report at 3 n.2, Pl.'s Resp. to the Def.'s Status Report ¶ 3), no genuine issue of material fact appears to exist with respect to the plaintiff's claim for back pay for the period of October 10, 1996, through December 5, 1996. Indeed, the defendant has essentially admitted as much by attempting to pay the plaintiff $2,386, which amount has not been disputed by the plaintiff as being the correct calculation of E–3 pay and allowances for the period of October 10, 1996, through December 5, 1996.[11] Accordingly, partial summary judgment in favor of the plaintiff is granted with respect to E–3 pay and allowances for that period.

### B. *December 6, 1996, to the Present*

■ Generally, the Government undertakes to pay servicemembers "only to the end of the current enlistment." *Austin v. United States,* 206 Ct.Cl. 719, 723 (1975). A servicemember might be entitled to pay beyond the expiration of his enlistment, however, if "held in confinement for the [Government's] convenience after his term of enlistment expire[s] in order to conduct court-martial proceedings, not in connection with serving his sentence." *Jagnandan v. United States,* 17 Cl.Ct. 107, 113 (1989) (cit-

ing *Dickenson v. United States,* 163 Ct.Cl. 512 (1963)), *aff'd,* 897 F.2d 538 (Fed.Cir. 1990). The plaintiff does not benefit from that exception to the general rule, however, because on and after December 6, 1996, he was confined in connection with serving his sentence.

■ Servicemembers also might be entitled to back pay of forfeited pay and allowances, notwithstanding expiration of enlistment, if a court-martial conviction is set aside or if a sentence, which has been set aside or disapproved, is not subsequently reimposed by a new trial or rehearing. *See* 10 U.S.C. § 875(a); *see, e.g., Rhoades v. United States,* 229 Ct.Cl. 282, 668 F.2d 1213 (1982) (where first conviction was set aside, plaintiff was entitled to back pay up to the date of his second conviction, notwithstanding the expiration of his term of enlistment); *Cowden v. United States,* 220 Ct.Cl. 490, 499, 600 F.2d 1354, 1359 (1979) ("an enlisted man confined after expiration of his term of enlistment is due pay and allowances for that period of confinement, if the original conviction is invalidated and either no new trial occurs, or one does occur and results in acquittal"). In the instant case, while the action of the convening authority has been set aside, the conviction and sentence of the court-martial have not been set aside or disapproved. Whether or not the plaintiff will eventually share circumstances similar to the claimants in *Rhoades* or *Cowden* depends upon the final disposition of his case in the military court system. Until the plaintiff's case has been adjudicated to finality in that system, however, this Court must heed the instruction of the Supreme Court of the United States to "refrain from intervention." *Schlesinger v. Councilman,* 420 U.S. 738, 758, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

Because the second convening authority's action and any appeals thereof have not yet reached finality, the plaintiff's claim for back

---

11. In its September 17, 2002 Order, the Court instructed the plaintiff to set forth in its response to the Defendant's Status Report any objection to the defendant's calculation of pay and allowances for the period in question. While the Plaintiff's Response to the Defendant's Status Report reiterates the plaintiff's consistent legal argument that he is entitled to pay and allowances for periods beyond December 5, 1996, it does not dispute the defendant's determination that $2,386 is the amount of pay and allowances forfeited between October 10, 1996, and December 5, 1996.

pay for all periods after December 5, 1996, is premature and must be dismissed for failure to exhaust remedies in the military court system. *See Paalan*, 51 Fed.Cl. 738, 747 (2002) (holding that because "ultimate liability to pay plaintiff after his contractual discharge date depends exclusively on the outcome of his appeals, and because those appeals are not concluded, defendant's motion to dismiss plaintiff's claim for active-duty pay accrued after [expiration of enlistment] is granted"); *see also Knight*, 26 Cl. Ct. 328 (dismissing a complaint seeking pay and allowances for period after expiration of enlistment).

### VI. *Penalty Interest and Illegal Confinement Pay*

The plaintiff alleges that "[p]ursuant to 31 U.S.C. 3902, Plaintiff is further entitled to 'penalty interest' of 3–4% for every 30 day period prompt payment was not rendered for the aforesaid military back pays." (Compl. at ¶ 13.)[12] The plaintiff's entitlement to such pay rests solely upon interpretation of the cited statute and is thus amenable to resolution by summary judgment.[13] *See United States v. Montoya*, 827 F.2d 143, 146 (7th Cir.1987) (holding that statutory interpretation is an activity undertaken by a trial court as a matter of law). This Court agrees with prior opinions of the Court of Federal Claims and its predecessor court: "the penalty interest statute on which plaintiff relies is a business contract prompt payment provision and is inapplicable to his case." *RuizGarcia v. United States*, 54 Fed. Cl. 41, 45 (2002) (citing *Boers v. United States*, 44 Fed.Cl. 725, 732 (1999)); *see also Ulmet v. United States*, 19 Cl.Ct. 527, 537 (1990) (holding that the Court of Federal Claims may not grant interest on military pay claims absent an express statute or contractual provision authorizing such interest

payments). The plaintiff further alleges entitlement to $531,000 of "illegal confinement pay." The plaintiff has not identified a specific waiver of governmental sovereign immunity that would permit such payment; in any event, no authority has found the plaintiff's confinement to be illegal. Accordingly, the defendant's converted motion for summary judgment is granted with respect to the plaintiff's claims for "penalty interest" and "illegal confinement pay."

### CONCLUSION

The plaintiff's motion for summary judgment is granted only with respect to liability for E–3 pay and allowances between the dates of October 10, 1996, and December 5, 1996, in the amount of $2,386. The remainder of the plaintiff's motion for summary judgment is denied. The defendant's converted motion for summary judgment is granted with respect to the plaintiff's claims for "penalty interest" and "illegal confinement pay" and such claims are to be dismissed with prejudice. The plaintiff's claim for back pay for all periods after December 5, 1996, is dismissed without prejudice to renewal after the plaintiff's court-martial has reached finality in the military court system.[14] The remainder of the plaintiff's claims are dismissed for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Because all claims have been dispensed with, the plaintiff's request for discovery is denied. The Clerk is ordered to enter judgment in accordance with this Opinion.

Each party is to bear its own costs.

---

12. "[T]he head of an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due." 31 U.S.C. § 3902(a).

13. The defendant's motion to dismiss this claim for failure to state a claim upon which relief can

be granted is considered a motion for summary judgment. *See* RCFC 12(b).

14. Because this claim is dismissed without prejudice, the Court denies the plaintiff's request for a " 'protective order' to raise issues before this Court after the appellate process is completed." (Pl.'s Resp. to the Def.'s Status Report ¶ 5.)