Eric ALLEN, Plaintiff-Appellant,

v.

Brigadier General O.K. STEELE, Commanding General, 1st Marine Brigade, et al., Defendants-Appellees.

No. 84–2257.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 1985.

Decided May 13, 1985.

Daniel A. Bent, U.S. Atty., Richard L. Puglisi, J. Peter Axelrod, Honolulu, Hawaii, for plaintiff-appellant.

Eric A. Seitz, Honolulu, Hawaii, for defendants-appellees.

Before FARRIS, PREGERSON and BEEZER, Circuit Judges.

PER CURIAM:

Allen brought this action seeking to enjoin a court-martial proceeding instituted against him by the United States Marine Corps. Allen claims that the military courts lack jurisdiction over him because he is a civilian. The district court denied Allen's request for a permanent injunction. We affirm.

## I

### Background

On August 28, 1979, Allen began a four-year active duty enlistment in the Marine Corps. Allen's discharge was scheduled for August 27, 1983. In May 1983, Marine Corps officials received information indicating that Allen had participated in an attempted rape and had committed perjury. The Naval Investigative Service ("NIS") began to investigate the allegations against Allen. In May and June of 1983, NIS agents interviewed Allen regarding the allegations. Formal charges were not immediately filed against Allen.

On August 8, 1983, Allen received terminal leave orders. Allen left Hawaii for his home in New Jersey. An executed discharge certificate was placed in Allen's record, but was not delivered to him.

On August 12, the NIS learned that Allen had left Hawaii. On August 18, a Marine Corps legal officer prepared a request that charges be drafted against Allen and that the charges be investigated. This request was received by Staff Sergeant C.L. Eagan on August 23. Meanwhile, a Marine Corps officer in Hawaii had sent a message to the Marine Corps headquarters in Philadelphia, requesting that Allen be contacted at home and issued orders to return to Hawaii. On August 23, a Marine Corps recruiter in Bringeton, New Jersey contacted Allen by telephone. Nevertheless, Allen did not return to Hawaii.

On September 7, an absentee warrant was issued for Allen. On that day, the Marine Corps received a letter from Allen

containing his identification cards and requesting the issuance of his discharge certificate. On September 9, formal charges were filed against Allen. Despite further efforts to locate Allen, he was not arrested until January 23, 1984.

Allen brought this action to enjoin a military court-martial against him on the ground that he had been discharged from military service and as a civilian was not subject to military jurisdiction. After initially granting a preliminary injunction, the district court denied Allen's request for a permanent injunction.

## II

### Standard of Review

 We review the district court's conclusions of law de novo. *Burrus v. Turnbo,* 743 F.2d 693, 699 (9th Cir.1984). The district court's findings of fact, however, are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52(a); *see Anderson v. City of Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985). It is permissible for the district court's findings on the permanent injunction to differ from those on the preliminary injunction because it is expected that "presentation of all the evidence" will affect the findings. *Sports Form, Inc. v. UPI,* 686 F.2d 750, 753 (9th Cir.1982).

## III

### Military Jurisdiction

Article 2(a)(1) of the Uniform Code of Military Justice, 10 U.S.C. § 802(a)(1), provides that court-martial jurisdiction extends to "[m]embers of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment." *See generally* D. Schlueter, *Military Criminal Justice: Practice and Procedure* § 4–8 (1982). Paragraph 11(d) of the *Manual for Courts-Martial*[1] provides:

---

1. This case is controlled by the 1969 version of the *Manual.* The 1969 version was recently superseded. Exec.Order 12,473, 49 Fed.Reg.

17,152 (1984) (effective date August 1, 1984). Rule 202(c)(1) of the 1984 version is substantially equivalent to the provision quoted above.

If action is initiated with a view to trial because of an offense committed by an individual before his official discharge—even though the term of enlistment may have expired—he may be retained in the service for trial to be held after his period of service would otherwise have expired.

It is thus necessary for us to determine whether Allen was officially discharged on August 27, 1983, and whether the Marine Corps took sufficient actions to retain court-martial jurisdiction after the end of Allen's term of enlistment.

A. *Discharge*

 As a general rule, court-martial jurisdiction continues until the servicemember is discharged. *See Dickenson v. Davis*, 245 F.2d 317, 319 (10th Cir.1957), *cert. denied*, 355 U.S. 918, 78 S.Ct. 349, 2 L.Ed.2d 278 (1958); *United States v. Douse*, 12 M.J. 473, 477 (C.M.A.1982) (opinion of Cook, J.); D. Schlueter, *supra*, § 4–8(B). The mere expiration of a term of enlistment does not terminate court-martial jurisdiction. *See Emma v. Armstrong*, 473 F.2d 656, 658 (1st Cir.), *cert. denied*, 414 U.S. 870, 94 S.Ct. 87, 38 L.Ed.2d 88 (1973); *United States v. Fitzpatrick*, 14 M.J. 394, 397 (C.M.A.1983). A discharge is not complete until the servicemember receives a discharge certificate. *United States v. Griffin*, 13 C.M.A. 213, 32 C.M.R. 213, 215 (1962); *Marine Corps Separation and Retirement Manual* ¶ 1007(1). It is undisputed that Allen has not received a discharge certificate. Accordingly, he is still subject to military jurisdiction.

 Allen argues, however, that he received self-executing orders that terminated his active duty status on August 27, 1983. It is apparent from the actions of both Allen and the Marine Corps officials that nobody regarded the orders as self-executing. Even if the orders were self-executing, however, they were superseded by the subsequent orders requiring him to return to Hawaii. We conclude that Allen's

active duty status was not terminated automatically on August 27, 1983.

B. *Actions by the Marine Corps*

 Court-martial jurisdiction attaches when "action with a view to trial" takes place. *See Messina v. Commanding Officer*, 342 F.Supp. 1330, 1333 (S.D.Cal. 1972); D. Schlueter, *supra*, § 4–8(A). Even before Allen's term of enlistment ended, the various military officials (1) interviewed Allen twice regarding the allegations, (2) conducted an ongoing investigation, (3) requested the drafting of charges against Allen, (4) sent a message to Philadelphia requesting that Allen be contacted and issued orders to return to Hawaii, and (5) contacted Allen and told him to report.[2] These actions, taken together, were sufficient to cause court-martial jurisdiction to attach. *See Roman v. Critz*, 291 F.Supp. 99, 102 (W.D.Tex.1968); *United States v. Self*, 13 M.J. 132, 137–38 (C.M.A.1982); *United States v. Rubenstein*, 7 C.M.A. 523, 529, 22 C.M.R. 313, 319 (1957).

 We are thus faced with a situation in which court-martial jurisdiction has attached to an undischarged servicemember who has separated from the military. The relevant law has been summarized as follows:

> [T]he Government loses jurisdiction to try a servicemember unless either (a) prior to his date of separation, some official action has been taken by which we "can say that at some precise moment the sovereign had authoritatively signaled its intent to impose its legal processes upon the individual ..."; or (b) after the member's date of separation, he does not object "to his continued retention"; or (c) if the servicemember "objects to his continued retention" on active duty after his date of separation and demands his discharge or release, the Government takes official action with the view to prosecution within "a reasonable time" after the

---

**2.** These facts demonstrate that Allen was aware that the Marine Corps was considering instituting court-martial proceedings. It is not necessary for us to decide whether and to what extent

notice is required. *See Fitzpatrick*, 14 M.J. at 398 (noting that the lower court had been troubled by the lack of specific notice to the defendant).

servicemember's protest of his retention in the service. . . .

*Fitzpatrick,* 14 M.J. at 397 (citations omitted). Applying the third alternative, it is apparent that Allen did not object to his retention on active duty until September 7, 1983.[3] On September 9, formal charges were filed. Under any standard, two days is "a reasonable time." Accordingly, we conclude that court-martial jurisdiction was preserved.

## IV

### *Conclusion*

Although we conclude that the military courts have jurisdiction over Allen, we do not mean to endorse the actions of the Marine Corps officials in this case. The Marine Corps could have dispatched written orders to Allen's address and recorded a written administrative hold on his discharge certificate. Under the facts of this case, it is apparent that Allen was aware of his status.[4] It is not difficult, however, to imagine a case in which delay or lack of notice would cause gross injustice. Nothing in this opinion should be interpreted as permitting military officials to prolong court-martial jurisdiction for an indefinite period of time pending the filing of charges after the expiration of an enlistment contract.

The judgment of the district court is AFFIRMED.

**3.** The district court treated August 27 as the date on which Allen protested his retention on active duty. While we can find no basis for the selection of that date, we would reach the same result if August 27 was the correct date.

**4.** In a slightly different context, Chief Judge Everett of the Court of Military Appeals summarized this situation as follows:

I do not condone failure of the Armed Services to discharge servicemembers promptly at the end of an enlistment—even without any specific demand for such a discharge. How-

ever, neither the Constitution nor the Congress has prescribed that military jurisdiction is lost under such circumstances. Indeed, in cases arising overseas such a rule might preclude trial of some heinous crimes by the only American forum possessing subject-matter jurisdiction.

*Douse,* 12 M.J. at 481 (Everett, C.J., concurring in the result).

