**Marcus L. WILLIAMS, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 05–1123C.

United States Court of Federal Claims.

April 25, 2006.

Marcus L. Williams, pro se, Fort Leavenworth, KS.

Dawn S. Conrad, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC. Of counsel was Lt. Col. P. Christopher Clark, Air Force Legal Services Agency, General Litigation Division, Arlington, VA.

### OPINION AND ORDER

LETTOW, Judge.

In this military pay case, Marcus Williams, a former staff sergeant in the United States Air Force, asserts claims for back pay and correction of his military records. In 2002,

Mr. Williams was adjudged guilty by a general court-martial of violations of the Uniform Code of Military Justice. As a result, he was sentenced to reduction in rank to airman basic, a dishonorable discharge, and nine years' confinement. Mr. Williams is currently imprisoned at the United States Disciplinary Barracks at Fort Leavenworth, Kansas. One of the consequences of his dishonorable discharge was that he was no longer eligible for payment of his accrued leave. In one of his claims before this court, he seeks recompense for those days of unused leave. In addition, Mr. Williams claims that the Air Force was without authority to separate him from service on October 1, 2004 and to classify his discharge as dishonorable. He avers that his Expiration Term of Service ("ETS") date was December 29, 2001, that he should be deemed to have been discharged on that date, and that his discharge should be classified as "honorable."

This case is before the court on the government's motion to dismiss and motion for judgment upon the administrative record, as well as Mr. Williams' cross-motions for judgment upon the administrative record and for summary judgment. For the reasons set forth, the government's motion to dismiss is denied but its motion for judgment upon the administrative record is granted. Mr. Williams' cross-motions are denied.

### BACKGROUND [1]

Mr. Williams enlisted in the Air Force on February 2, 1993. Compl. ¶ 5; see Administrative Record ("AR") 170 (Certificate of Release or Discharge from Active Duty). His original enlistment period was for four years. Compl. ¶ 5. He re-enlisted in the Air Force on January 30, 1997, with an ETS of February 28, 2001. Id. Subsequently, Mr. Williams' enlistment was further extended to December 28, 2001, moving his ETS date to December 29, 2001. Id. ¶ 6; see id. Ex. A (Extension of Enlistment form (Feb. 28, 2001)).

On June 2, 2001, then-Staff Sergeant Williams was apprehended and placed in mil-

---

1. The recitations that follow do not constitute findings of fact by the court. Rather, the recited factual elements are taken from the parties' filings and are either undisputed or alleged and assumed to be true for purposes of the pending motions.

itary confinement and charged with violations of the Uniform Code of Military Justice ("UCMJ"). Defendant's Motion for Judgment on the Administrative Record ("Def.'s Judgment Mot.") App. at 28–29 (Charge Sheet) (Sept. 20, 2001).[2] Court-martial charges were preferred against then-Staff Sergeant Williams on September 20, 2001. Def.'s Judgment Mot.App. at 28–29.[3] The charges against him were referred for trial by general court-martial on November 20, 2001. Def.'s Judgment Mot.App. at 30 (Charge Sheet).

Then–Staff Sergeant Williams' court-martial convened on January 10, 2002. He pled guilty to all of the charges except unlawful entry of a dwelling with intent to commit an assault and aggravated assault, although he did also plead guilty to simple assault, a lesser included offense to aggravated assault. AR 4–6 (Report of Result of Trial (Jan. 11, 2002)). He was found guilty of all charges, and on January 11, 2002, he was sentenced to a dishonorable discharge, confinement for a period of ten years, and reduction in grade to Airman Basic from Staff Sergeant. AR 4–6. On May 3, 2002, the Convening Authority for the General Court–Martial approved the court-martial sentence,[4] and ordered all elements of the sentence except the dishonorable discharge to be executed. AR 7–9 (General Court Martial Order No. 8 (May 3, 2002)). On December 17, 2002, Williams appealed his conviction to the United States Air Force Court of Criminal Appeals ("AFCCA"), alleging four different errors at his court-martial: that (1) the housebreaking charge was legally and factually insufficient because Williams claimed he was invited into house; (2) the military judge erred in denying his speedy trial motion despite the fact that he spent 222 days in confinement before arraignment; (3) the sentence was "inappropriately severe;" and (4) his right to financial privacy was violated. AR 11–32 (Assignment of Errors and Brief on Behalf of Appellant, *United States v. Williams,* No. ACM 35122 (A.F.Ct.Crim.App. Dec. 17, 2002)). Williams additionally asked the AFCCA to consider whether he had been prejudiced by prosecutorial misconduct. AR 92–96 (Supplemental Assignment of Error, *United States v. Williams,* No. ACM 35122 (A.F.Ct.Crim.App. July 3, 2003)). Upon review of all of these claims, the AFCCA upheld the conviction. *United States v. Williams,* No. ACM 35122, 2004 WL 388773 (A.F.Ct.Crim.App. Feb.20, 2004).[5] Williams then petitioned for review of his conviction in the U.S. Court of Appeals for the Armed Forces, but his petition was denied. *United States v. Williams,* No. 04–0368/AF, 60 M.J. 286 (C.A.A.F. July 21, 2004); *see* AR 168 (slip op.). Appellate review having been completed, Williams' dishonorable discharge was ordered to be executed, AR 169 (General Court–Martial Order No. 132 (Aug. 30, 2004)), and on October 1, 2004, he was dishonorably discharged from the Air Force. AR 170 (Certificate of Release or Discharge from Active Duty).

## ANALYSIS

The government requests that the court dismiss Mr. Williams' claim for lack of juris-

---

2. The Uniform Code of Military Justice is codified at 10 U.S.C. §§ 801–946.

3. He was charged with (1) unlawful entry of a dwelling with the intent to commit an assault (violation of UCMJ Art. 130, 10 U.S.C. § 930); (2) assault with a deadly weapon (violation of UCMJ Art. 128, 10 U.S.C. § 928); (3) theft of a government-owned handgun (violation of UCMJ Art. 121, 10 U.S.C. § 921); (4) desertion (violation of UCMJ Art. 85, 10 U.S.C. § 885); (5) unlawful transport of a stolen firearm (violation of UCMJ Art. 134, 10 U.S.C. § 934); and (6) forging four different checks with the intent to defraud (violation of UCMJ Art. 123, 10 U.S.C. § 923). Def.'s Judgment Mot.App. at 28–29.

4. "Convening authority" is the term assigned to an officer empowered to convene a general court-martial pursuant to 10 U.S.C. § 822. After trial, the convening authority must take action on the sentence of a court-martial and "may approve, disapprove, commute, or suspend the sentence in whole or in part." 10 U.S.C. § 860(c)(2); *see Anderson v. United States,* 54 Fed.Cl. 620, 622 n. 2 (2002).

5. The AFCCA also acted *sua sponte* to consider the factual sufficiency of the aggravated assault offense, and found that there was insufficient evidence to prove that the handgun Williams had used contained ammunition. As a result, the AFCCA determined that he could be found guilty of simple assault rather than aggravated assault, and reduced his period of confinement to nine years. *Williams,* 2004 WL 388773, at *8–10.

diction pursuant to 28 U.S.C. § 1500. In the alternative, the government requests that the court grant judgment upon the administrative record, which consists of documents from the case file for Mr. Williams' general court-martial. The court first addresses the government's motion to dismiss, then turns to the government's motion for judgment on the administrative record and Williams' cross-motions for judgment in his favor.

### A. Jurisdiction

Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). As the plaintiff, Mr. Williams bears the burden of establishing the court's subject-matter jurisdiction over his claims. *See McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). The government seeks to have Mr. Williams' claim dismissed under RCFC 12(b)(1). "Challenges to 'a court's general power to adjudicate in specific areas of substantive law' " are properly raised by way of motions under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). *Reed Island–MLC, Inc. v. United States*, 67 Fed.Cl. 27, 32 (2005) (quoting *Anderson v. United States*, 59 Fed.Cl. 451, 455–56 (2004), and *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed.Cir.1999)). When ruling on a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Hamlet v. United States*, 873 F.2d 1414, 1415–16 (Fed.Cir. 1989). If the undisputed facts reveal any possible basis on which the plaintiff might prevail, the court must deny the motion. *See Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Mr. Williams' complaint jurisdictionally rests upon the Tucker Act, 28 U.S.C. § 1491(a), and requests back pay and correction of his military records.[6] Mr. Williams avers that he accumulated leave days pursuant to 10 U.S.C. § 701, Compl. ¶ 11,[7] and that he would have been eligible for payment for his unused leave pursuant to 37 U.S.C. § 501 if he had received an honorable discharge. Compl. ¶ 12.[8] These statutes constitute money-mandating provisions sufficient to invoke the jurisdiction of this court because they would have required the United States to pay Williams for any unused leave days but for his other-than-honorable discharge. *See, e.g., Smith v. United States*, 230 Ct.Cl. 787 (1982) (addressing the statutory limitation in 37 U.S.C. § 501(f) that payment may not be made for more than 60 days of accrued leave); *Carlisle v. United States*, 66 Fed.Cl. 627, 631–32 (2005) (discussing appropriate payment to a plaintiff for unused accrued

---

6. In pertinent part, 28 U.S.C. § 1491(a) provides:
 (1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon ... any Act of Congress or any regulation of an executive department .... (2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

7. In pertinent part, 10 U.S.C. § 701 states:
 (a) A member of an armed force is entitled to leave at the rate of 2½ calendar days for each month of active service, excluding periods of—

(1) absence from duty without leave;
. . .
(3) confinement as the result of a sentence of a court-martial . . . .

8. In pertinent part, 37 U.S.C. § 501 provides:
 (b)(1) A member of the ... Air Force ... who has accrued leave to his credit at the time of his discharge, is entitled to be paid in cash or by a check on the Treasurer of the United States for such leave on the basis of the basic pay to which he was entitled on the date of discharge.
 . . . .
 (e)(1) A member of the ... Air Force ... who is discharged under *other than honorable conditions* forfeits all accrued leave to his credit at the time of his discharge.
 (Emphasis added.)

leave upon honorable discharge pursuant to 37 U.S.C. § 501(b)(1)).

Mr. Williams specifically seeks (1) "$3,777.00 ... for accrued leave including any delayed compensation that may be due;" (2) that his "military records be corrected to state the reported conclusive date of his Expiration of Term of Service and/or Date of Separation of 29 December, 2001, and that such relevant records of separation and discharge be characterized as 'Honorable' ...."; and (3) that he "be awarded his cost[s] incurred in this suit." Compl. at 5–6 (Prayer for Judgment ¶¶ B–D). Nowhere in his complaint does Williams challenge, or even mention, his court-martial.[9] He asserts that the Air Force imposed the dishonorable discharge "without warrant or authority" and that the Air Force wrongfully denied payment for accrued leave days as a result of his dishonorable discharge. Compl. ¶ 10. As a result, Williams is not here challenging the substance of his court-martial, but rather the Air Force's authority to extend involuntarily plaintiff's term of service because of the pending court-martial charges and whether the Air Force properly exercised any such authority.

Mr. Williams' complaint falls within this court's generally applicable jurisdiction under the Tucker Act unless this jurisdiction is displaced by a superseding jurisdictional grant or limitation. *See, e.g., Matson Navigation Co. v. United States*, 284 U.S. 352, 359–60, 52 S.Ct. 162, 76 L.Ed. 336 (1932) (Court of Claims did not have jurisdiction over a contract whose subject matter was covered by the Suits in Admiralty Act, 46 U.S.C. § 742 (1932), providing for jurisdiction in federal district courts); *Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1373–74 (Fed.Cir.2005) (displacement of

Tucker Act by specific jurisdictional provisions of Subsections 506(d) and 508(j) of the Federal Crop Insurance Act, 7 U.S.C. §§ 1506(d), 1508(j)); *Wilson v. United States*, 405 F.3d 1002, 1012–13 (Fed.Cir.2005) (displacement of the Tucker Act by specific jurisdictional provisions of Subsection 205(g) of the Medicare Act, 42 U.S.C. § 405(g)); *Doe v. United States*, 372 F.3d 1308, 1312–13 (Fed.Cir.2004) (recognizing limitation on a district court's authority to grant equitable or declaratory relief under the Little Tucker Act, 28 U.S.C. § 1346(a)(2)); *Boston Edison Co. v. United States*, 64 Fed.Cl. 167, 174–77 (2005) (Tucker Act displaced by explicit jurisdictional provisions of Subsection 119(a) of the Nuclear Waste Policy Act, 42 U.S.C. § 10139(a), but not as to matters outside those specific provisions); *Southern Cal. Edison v. United States*, 69 Fed.Cl. 66, 74–78 (2005) (Tucker Act displaced by specific jurisdictional provisions of Subsection 9(e) of the Northwest Power Act, 16 U.S.C. § 839f(e), but not as to matters outside those provisions). In the government's pending motion to dismiss, it asserts that the jurisdiction of this court under the Tucker Act is displaced by the operation of 28 U.S.C. § 1500, which creates an exception to this court's general Tucker Act jurisdiction by precluding the court from hearing claims brought before it against the United States that are also "pending" in other courts. Defendant's Motion to Dismiss ("Def.'s Mot. to Dismiss") at 6–11 (citing *Keene Corp. v. United States*, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (Fed.Cir. 1994) (*en banc*)).[10]

"The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the

---

**9.** Because Williams' claims do not directly constitute a collateral attack on his court-martial, the court need not undertake the analysis suggested in *Matias v. United States*, 923 F.2d 821 (Fed.Cir.1990), which indicates that a plaintiff can pursue in this court a limited collateral attack of a court-martial conviction on constitutional grounds if the action is otherwise within this court's jurisdiction. *See Matias*, 923 F.2d at 822–23 (citing *Bowling v. United States*, 713 F.2d 1558, 1560 (Fed.Cir.1983), and *Gearinger v. United States*, 188 Ct.Cl. 512, 412 F.2d 862, 864

(1969) (recognizing the Court of Claims' jurisdiction to hear collateral attacks on court-martial convictions)); *see also Ragard v. United States*, 439 F.3d 1378, 1380 (Fed.Cir.2006).

**10.** In pertinent part, 28 U.S.C. § 1500 provides that "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff ... has pending in any other court any suit or process against the United States."

Court of Federal Claims is filed." *Lovela-dies Harbor*, 27 F.3d at 1548. Mr. Williams has filed several actions in federal trial courts that have some relationship to the claims he made in the instant case. One such action was brought in this court. On November 19, 2004, Williams filed a complaint in this court challenging his court-martial. *See* Def.'s Judgment Mot.App. at 1–5 (Complaint, *Williams v. United States*, No. 04–1690C (Fed.Cl. filed Nov. 19, 2004)). This complaint alleged that Mr. Williams' enlistment had ended on January 30, 2002, and therefore that the Air Force did not have jurisdiction to approve the sentence of his court-martial on May 3, 2002. *Id.* at 2–3, 5. He subsequently filed a request for voluntary dismissal of this complaint on December 22, 2004, and the action was dismissed on December 27, 2004. *Id.* at 18–19 (Docket Sheet). On December 13, 2004, Williams filed a complaint attacking his court-martial in the United States District Court for the District of Columbia. *See id.* at 20–25 (Complaint, *Williams v. Department of the Air Force*, No. 04CV02161 (D.D.C. filed Dec. 13, 2004)). In this complaint, Williams alleged that he had not been lawfully retained by the Air Force after his ETS date of December 30, 2001, and therefore that the Air Force did not have court-martial jurisdiction over him. *Id.* at 21, 25. He subsequently filed an amended complaint that added a further allegation that Air Force personnel knowingly violated his constitutional rights. *See id.* at 36–44 (Amended Complaint, *Williams v. Department of the Air Force*, No. 04CV02161 (D.D.C. filed Dec. 30, 2004)). The district court dismissed plaintiff's case without prejudice on June 27, 2005 because plaintiff failed to comply with the court's order to respond to the government's motion to dismiss. *Id.* at 58 (Order, *Williams v. Department of the Air Force*, No. 04CV02161 (D.D.C. June 27, 2005)). Williams moved for relief from the order of June 27, 2005, but the district court denied this motion. *Id.* at 59 (Order, *Williams v. Department of the Air Force*, No. 04CV02161 (D.D.C. August 18, 2005)). On July 29, 2005, Williams filed a notice of appeal to the United States Court of Appeals for the District of Columbia Circuit. Def.'s Motion to Dismiss Supp.App. at 2 (Docket,

*Williams v. Department of the Air Force*, No. 05–5292 (D.C.Cir. filed July 29, 2005)). While this appeal was still pending, on October 18, 2005, Williams filed the complaint in the current case. Thereafter, on January 13, 2006, the D.C. Circuit granted the government's motion for summary affirmance of the district court's order. *See* Def.'s Motion to Dismiss Supp.App. at 3 (Order, *Williams v. Department of the Air Force*, No. 05–5292 (D.C.Cir. Jan. 13, 2006)). Thus, it appears that Williams had a claim "pending" in the D.C. Circuit when his current claim was filed in this court.

Determining whether a related claim was pending in another court at the time a complaint was filed with this court, however, is only the first step in an inquiry whether Section 1500 applies. "For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from *the same operative facts*, and must seek *the same relief*." *Loveladies*, 27 F.3d at 1551 (emphasis in original). "'Deciding if the claims are the same or distinctly different'" requires a careful comparison of the claims presented by a plaintiff in this court and in another court. *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed.Cir.2004) (citing *Loveladies*, 27 F.3d at 1549).

The government avers that Williams' claim is based on the same operative facts as the district court claim, satisfying the first prong of the *Loveladies* test. *See* Def.'s Mot. to Dismiss at 8–10. Many of the factual allegations in this case do indeed match those in Williams' complaint in the district court; the primary example is Williams' assertion that his ETS was December 29, 2001. *Compare* Compl. ¶¶ 5–7, *with* Def.'s Judgment Mot. App. at 39 (Amended Complaint ¶¶ 8–10, *Williams v. Department of the Air Force*, No. 04CV02161 (D.D.C. filed Dec. 30, 2004)). However, Williams' complaint in the district court alleged other operative facts not alleged in the present case, and *vice-versa*. For example, unlike the complaint in the district court, his complaint in this court neither alleges that the Air Force lacked court-martial jurisdiction over him nor that he was deprived of his Sixth Amendment

right to a speedy trial. *See* Def.'s Judgment Mot.App. at 42–43. Correlatively, unlike his complaint in this court, Williams' complaint in the district court did not refer to, or make a claim for, the accrued leave. *See* Compl. ¶ 11. In this respect, the government contends that Williams has "attempt[ed] to disguise his complaint before this [c]ourt so it appears that it is based upon different facts than his complaint before the district court." Def.'s Mot. to Dismiss at 10. Despite this protest by the government, the operative facts in each case are demonstrably different, and it is readily apparent that Williams has specifically and successfully endeavored to plead different factual elements in each case.

The government also avers that Williams has in this court effectively requested the "same relief" as he did in the district court claim, thus satisfying the second prong of the *Loveladies* test. *See* Def.'s Mot. to Dismiss at 10–11. In *Harbuck,* the Federal Circuit indicated that the "same relief" does not require that the relief requested in both claims be *exactly* the same, but rather that there must be " '*some* overlap in the relief requested.' " *Harbuck,* 378 F.3d at 1329 (quoting *Keene Corp.,* 508 U.S. at 212, 113 S.Ct. 2035) (emphasis added). The plaintiff in *Harbuck* had filed a complaint in district court against the United States alleging sexual discrimination in her employment and seeking monetary and injunctive relief. 378 F.3d at 1326–27. The district court transferred a claim for monetary relief under the Equal Pay Act, 29 U.S.C. § 206(d), to this court and retained the other claims. *Id.* at 1327. The transferred claim was subsequently dismissed because of Section 1500. *Id.* The Federal Circuit affirmed the dismissal of that claim by this court, concluding that this court did not have jurisdiction because the prayer for monetary relief in the transferred claim was "identical to *one* of the prayers for relief in the ... district court complaint." *Id.* at 1329 (emphasis added).

In this case, however, there is no explicit overlap in the requested relief. Williams seeks monetary relief and correction of his military records in this court. Compl. at 5–6 (Prayer for Judgment ¶¶ B–C). In the district court, Williams sought only declaratory relief: specifically, (1) a "decree declaring that [p]laintiff was not on active duty ... after the expiration of his ... enlistment and was neither lawfully retained in service by proper authority nor reentered onto active duty to be tried, convicted, sentenced and punished by General Court–Martial;" and (2) a "decree that those officers ... who were part of the pretrial and court-martial proceedings did so in knowing ... violation[ ] of the [p]laintiff's Constitutional rights." Def.'s Judgment Mot.App. at 43 (Amended Complaint, *Williams v. Department of the Air Force,* No. 04CV02161 (D.D.C. filed Dec. 30, 2004)). The government asks this court to cut through the pleading distinctions in Williams' complaints to treat the correction of military records that Williams seeks here as "overlapping" with the declaratory relief that he sought from the district court, with the result that the "same" relief would be sought in both courts for purposes of Section 1500. *See* Def.'s Mot. to Dismiss at 10–11. The government also argues that any monetary relief that might be ordered by this court would necessarily be accompanied by equitable relief in the form of an honorable discharge, which of necessity would require this court to find that the court-martial was improper, a matter pending before the district court. *Id.* at 11.

The pleading nuances employed by Williams do have consequences, however. An instructional case in this regard is *Kidwell v. Department of the Army,* 56 F.3d 279 (D.C.Cir.1995). In *Kidwell,* the government argued that the plaintiff's claim for equitable relief was "in essence" a claim for monetary relief because the equitable relief sought, a change in discharge status, would have resulted in monetary relief. The D.C. Circuit stated that a "plaintiff does not 'in essence' seek monetary relief ... merely because he ... hints at some interest in a monetary reward ... or because success on the merits may obligate the United States to pay the complainant." 56 F.3d at 284. As the D.C. Circuit held, the "plain terms" of the complaint should be used to determine the jurisdiction of the court, because to look beyond the plain terms of the complaint would require the court to go "outside the record" to determine what kind of relief a plaintiff

"might receive" in order to determine its own jurisdiction. *Id.* at 285–86. This case is essentially the mirror image of *Kidwell.* It would require this court to go "outside the record" to predict what other relief plaintiff "might receive" if the court were to grant Williams monetary damages and correction of his military records. The government's motion to dismiss for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500 is therefore denied.

### B. Judgment on the Administrative Record

In the alternative, the government requests that the court grant judgment in its favor on the basis of the administrative record filed in this case. Based on the claims presented by Williams' complaint, the court need only determine (1) whether the Air Force had the authority to extend Mr. Williams' term of service beyond his ETS and whether the Air Force properly invoked that authority, and (2) whether the dishonorable discharge that resulted from Mr. Williams' court-martial was a proper predicate for the forfeiture of any leave that Mr. Williams had accrued.

### 1. *Extension of Williams' time in service.*

 The government first argues that Mr. Williams waived his ability to contest his service extension because he did not raise jurisdictional defects during his court-martial and appeals in the military court system. Def.'s Judgment Mot. at 6–9. However, this court is not reviewing the court-martial but instead the Air Force's extension of Mr. Williams' term of service prior to his court-martial. Rather than waiver, the issue is the Air Force's authority to extend plaintiff's service.

The Air Force retains jurisdiction over a service member who, at the end of an enlistment period, is confined awaiting court-martial charges. UCMJ Article 2, 10 U.S.C. § 802, provides that members of the armed forces who are awaiting discharge are subject to the UCMJ.[11] In that respect, Rule 202(c)(1) of the Rules for Courts–Martial ("RCM")[12] expressly states that a service member can be retained on active duty over his objection notwithstanding the expiration of his term of service:

(c) Attachment of jurisdiction over the person.

(1) In general. Court-martial jurisdiction attaches over a person when action with a view to trial of that person is taken. Once court-martial jurisdiction over a person attaches, such jurisdiction shall continue for all purposes of trial, sentence, and punishment, *notwithstanding the expiration of that person's term of service* or other period in which that person was subject to the code or trial by court-martial. When jurisdiction attaches over a servicemember on active duty, the servicemember *may be held on active duty over objection pending disposition of any offense for which held* and shall remain subject to the code during the entire period.

(Emphasis added.) *See Paalan v. United States,* 51 Fed.Cl. 738, 744 (2002), *aff'd,* 120 Fed.Appx. 817 (Fed.Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 91, 163 L.Ed.2d 108 (Oct. 3, 2005); *see also Allen v. Steele,* 759 F.2d 1469, 1471 (9th Cir.1985).

Court-martial jurisdiction attaches when "action with a view to trial" takes place. RCM 202(c)(1); *Allen,* 759 F.2d at 1471.

---

11. This Article specifies that persons who are subject to the UCMJ include "[m]embers of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment." 10 U.S.C. § 802(a)(1). This Article further provides that "(c) Notwithstanding any other provision of law, a person serving with an armed force ... is subject to this chapter until such person's active service has been terminated in accordance with law or regulations promulgated by the Secretary concerned." 10 U.S.C. § 802(c).

12. UCMJ Art. 36, 10 U.S.C. § 836, authorizes the President to prescribe regulations for "[p]retrial, trial, and post-trial procedures." 10 U.S.C. § 836(a). The Rules for Courts–Martial are located at Part II of the Manual for Courts–Martial, which was originally prescribed by Executive Order No. 12473, 49 FR 17152 (Apr. 13, 1984), and has been amended by numerous subsequent executive orders. The as-amended version of the Manual in effect at the time of Williams' court-martial was promulgated in October 1999. *See* Exec. Order No. 13140, 64 FR 55115 (Oct. 6, 1999). The pertinent sections of the RCM appear in Def.'s Judgment Mot.App. at 64–65.

RCM 202(c)(2) states that "[a]ctions by which court-martial jurisdiction attaches include: apprehension; imposition of restraint, such as restriction, arrest, or confinement; and preferral of charges." Charges were preferred against Williams on September 20, 2001, before his ETS of December 29, 2001. Def.'s Judgment Mot.App. at 28–29.[13] Consequently, because of the court-martial charges pending against then-Staff Sergeant Williams, the Air Force had authority to retain jurisdiction over him after his term of service had expired. Accordingly, Williams' request to have his date of separation modified to December 29, 2001 is without merit. In addition, this court may not address the merits of decisions by the military as reflected in a servicemember's record when those determinations are not tied to a monetary claim. *See Voge v. United States*, 844 F.2d 776, 781 (Fed.Cir.1988) (citing *Austin v. United States*, 206 Ct.Cl. 719, 723 (1975)).

2. *Forfeiture of accrued leave through operation of 37 U.S.C. § 501.*

■ Part of the sentence imposed as a result of Williams' court-martial was a dishonorable discharge from the Air Force. *See* AR 169 (General Court–Martial Order No. 132).[14] As noted, he ultimately received a dishonorable discharge from the Air Force on October 1, 2004. AR 170 (Certificate of Release or Discharge from Active Duty). Section 501(e)(1) of Title 37, United States Code, provides that "[a] member of the . . . Air Force . . . who is discharged under other than honorable conditions forfeits all accrued leave to his credit at the time of his discharge." The court-martial sentence and subsequent dishonorable discharge thus elided statutory authorization for payment to Williams for any accrued leave days that he

had at the time of his dishonorable discharge. His requests for payment for accrued leave days and for modification of his discharge status to "honorable" are accordingly without merit.

## CONCLUSION

For the reasons set forth above, the government's motion to dismiss is DENIED, its motion for judgment upon the administrative record is GRANTED, and Mr. Williams' cross-motions are DENIED.[15] The clerk shall enter judgment in favor of defendant.

It is so ORDERED.

---

13. Moreover, delivery of a discharge certificate must precede any discharge from active duty. 10 U.S.C. § 1168. Williams did not receive his discharge certificate until October 1, 2004. AR 170 (Certificate of Release or Discharge from Active Duty (Oct. 1, 2004)).

14. A General Court–Martial has authority under the Rules for Courts–Martial to impose a sentence including dishonorable discharge, if the maximum authorized punishments for the charged misconduct, as set forth in Part IV of the Manual for Courts–Martial, so allow. *See* RCM 1003(b)(8)(B), 1003(c)(1)(A). The charges for which Mr. Williams was convicted carried a

maximum sentence that included dishonorable discharge; *i.e.*, dishonorable discharge was an authorized punishment upon conviction for such charges. *See* Manual for Courts–Martial Part IV "Punitive Articles".

15. Also DENIED are Mr. Williams' Motion to Strike or Deny Defendant's Motion for Judgment Upon the Administrative Record for Failure to Provide Statement of Material Facts Pursuant to Rule 56.1, his Motion for Judgment Pursuant to Rule 8(d), and his Motion for Summary Judgment on Admitted Material Facts.