HERITAGE MINERALS, INC. and
Hovsons, Inc., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 03–2228L.

United States Court of Federal Claims.

July 7, 2006.

Kevin J. Coakley and Brendan Judge, Roseland, New Jersey, for Plaintiff.

Kelly A. Johnson, U.S. Department of Justice, Environment and Natural Resources Division, Washington, DC, and Evan Pritchard, U.S. Department of Justice, Environment and Natural Resources Division, Washington, DC, for Defendant. Roslyn T. Tobe, Office of the General Counsel, U.S. Navy, Washington Navy Yard, DC, Of Counsel.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

WILLIAMS, Judge.

In this takings action, Plaintiffs, Heritage Minerals, Inc. and Hovsons, Inc. (Heritage) seek compensation from the United States stemming from the Navy's installation and maintenance of groundwater-monitoring wells on their property. Plaintiffs' property is adjacent to a Naval base where testing of aircraft caused release of liquid waste which

contaminated the groundwater on both the base and Plaintiffs' property.

Plaintiffs previously filed an action in the United States District Court for the District of New Jersey challenging the contamination and seeking damages under the Federal Tort Claims Act (FTCA) and the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) as well as under a common law theory of trespass. The District Court dismissed this action as time-barred, and Plaintiffs appealed to the United States Court of Appeals for the Third Circuit on September 3, 2003. A few weeks later, on September 25, 2003, with that appeal pending, Plaintiffs filed the instant action.

This matter comes before the Court on Defendant's motion to dismiss. At issue is whether 28 U.S.C. § 1500 bars this Court from hearing this action because the same claim was pending in the Third Circuit at the time suit was filed here. Because the District Court action and appeal challenged the contamination, and the instant action challenges later and different conduct—the installation and maintenance of the groundwater-monitoring wells—the cases do not involve the same operative facts, and § 1500 does not divest this Court of jurisdiction. As such, Defendant's motion to dismiss is denied.

### Background[1]

Heritage Minerals owns approximately 6900 acres of undeveloped land located next to the Lakehurst Naval Air Engineering Center (Lakehurst Base), which is owned and operated by the United States. Court of Federal Claims (COFC) Compl. ¶¶ 2–5; Answer ¶ 4; Pls.' Resp. to Def.'s Proposed Findings of Uncontroverted Fact in Supp. of Def.'s Mot. for Partial Summ. J. ¶ 1. The property is within the Pinelands National Reserve (the Reserve), which was created by Congress in 1978 to "protect, preserve and enhance the significant values of the land and water resources" of approximately 1,000,000 acres of pine-oak forest in New Jersey. 16 U.S.C. § 471i(a)(1); (b)(1) (1978). No development within the Reserve is permitted unless it is reviewed by the New Jersey Pine-

lands Commission (Commission) and found to be in conformance with the Commission's Comprehensive Management Plan (CMP), codified at N.J.A.C. 7:50–1.1, *et seq*; *see also* N.J.S. 13:18A–10(c); N.J.A.C. 7:50–4.2 (1979).

Since 1958, the base has been used for the testing of aircraft launching and recovery activities. Def.'s Ex. 2 at 2. Lakehurst Base utilizes two 5,000–foot operational runways, a 12,000–foot catapult and arresting gear test runway, a helicopter test complex, and other facilities to support naval aviation and related programs, including the development and testing of weapons systems. COFC Compl. ¶¶ 7–8. Past releases of liquid wastes associated with these activities resulted in contamination of groundwater at the base in the early 1960s and early 1970s. *Id.* ¶ 10; Answer ¶ 10. The contamination has since migrated into the groundwater underlying at least 500 acres of Plaintiffs' property. COFC Compl. ¶ 11; Pls.' Ex. C at 2.

In 1987, Lakehurst Base was designated as a National Priorities List (NPL) or Superfund site under CERCLA, 42 U.S.C. §§ 9601 to 9675. Four years later, pursuant to a remediation plan approved by the United States Environmental Protection Agency (EPA) and the New Jersey Department of Environmental Protection and Energy (DEP), the Navy requested permission to install monitoring wells on Plaintiffs' property and to periodically access the wells to take groundwater samples. Def.'s Ex. 3 (the 1991 Agreement) at DOJ000280. Under the terms of the 1991 Remediation Plan, in the event the Navy determined that the groundwater beneath Plaintiffs' land was contaminated, it would recommend that the Navy take "all appropriate actions" to comply with EPA and DEP requirements. *Id.* at DOJ000281. Plaintiffs agreed and authorized the Navy to execute its water-sampling plan on November 15, 1991. *Id.* at DOJ000282.

### Plaintiffs' FTCA Administrative Claim

On February 14, 1995, Plaintiffs filed an administrative claim seeking $10,375,000 in property damages resulting from the Navy's

---

1. The background is derived from the pleadings and attachments to the motion papers.

contamination of their property.[2] Def.'s Ex. 7 at DOJ000459. In a letter dated December 19, 1997, Plaintiffs provided the Navy with an appraisal dated December 18, 1997, to support their administrative claim. Def.'s Ex. 8. In that letter, Plaintiffs stated that their claim "includes as a basis not only the contamination related to the Lakehurst U.S. Naval Air Station but also the impact of environmental sampling, testing and analysis activities being conducted on the claimant's property." *Id.* at DOJ000387. The appraisal report stated:

> [t]he scope of this report requires an estimate of market rental value and consideration of any collateral damages the result of a temporary taking caused by the United States of America Department of the Navy as it relates to the [1995] lease agreement referenced including installation of monitoring and testing wells in accordance with Record of Decision Areas I and J which essentially will require monitoring testing and remediation for a period currently estimated at 30 years.

*Id.* at DOJ000396.

Since the Navy did not respond to the administrative claim within six months, Plaintiffs treated the lack of response as a denial and subsequently filed an action in district court.

### The 1995 Agreement

Pursuant to an agreement dated November 3, 1995 (the 1995 Agreement), Plaintiffs granted the Navy the right to enter upon a portion of their property for a period of five years for further remedial activities related to the groundwater contamination, including installation of additional monitoring wells and continued monitoring of the previously installed wells. Def.'s Ex. 4 ¶¶ 1, 4; *see also* COFC Compl. ¶ 12. This Agreement included the following provision:

> [The] Navy acknowledges that Heritage Minerals has reserved all right to assert a claim for damages due to the temporary or permanent physical invasion of the subject property as the result of the initial well

installation and installation of the 14 new wells, and a claim for damages due to the diminished value and right to use the area contaminated by the Navy.

Def.'s Ex. 4. This agreement was subject to renewal for an additional five-year period at the option of the Navy with the consent of Heritage. *Id.* ¶ 2.

A total of 35 wells have been installed on Plaintiffs' property since February 27, 1991. Pls.' Resp. to Def.'s Proposed Findings of Uncontroverted Fact in Supp. of Def.'s Mot. for Partial Summ. J. ¶ 12.

### Plaintiffs' District Court Action And Appeal

On January 8, 1999, Plaintiffs filed a complaint in the United States District Court for the District of New Jersey. *Heritage Minerals, Inc. and Hovsons, Inc. v. United States,* 99–CV–83 (MLC) (Dt.Ct.Compl.).[3] Plaintiffs sought compensatory damages from the United States as a result of the Navy's "acts of discharging and releasing toxic and hazardous materials, substances and wastes into the water and ground at its base in Lakehurst, New Jersey, which has resulted in the contamination of the ground and water on the adjacent property owned by plaintiffs." Dt. Ct. Compl. ¶ 1. The District Court complaint alleged violations of the New Jersey Water Pollution Control Act, CERCLA, the FTCA and common law trespass, and referenced the earlier administrative claim, the appraiser's report, and the 1995 Agreement. The complaint mentioned that the Navy installed groundwater-monitoring wells on Plaintiffs' property in accordance with the 1995 Agreement, but at the time the District Court complaint was filed, Plaintiffs had agreed to allow the Navy to install and monitor the wells, and Plaintiffs did not then allege that this conduct was a taking. *Id.* ¶ 34.

Plaintiffs further alleged that the contamination constituted "an ongoing trespass that interfere[d] with the plaintiffs' use and possession of the Property," and that "[a]s a result of such ongoing trespass, plaintiffs

---

**2.** Such an administrative claim is a jurisdictional prerequisite to an FTCA suit.

**3.** On November 2, 2000, Plaintiffs amended the District Court complaint to add the EPA as a defendant. Def.'s Ex. 10.

have suffered damages as the utility and value of the Property has been substantially diminished." Plaintiffs sought "all damages incurred or to be incurred as a result of such trespass." *Id.* ¶¶ 71–72. In their prayer for relief, Plaintiffs sought:

1. Damages incurred, including but not limited to compensatory damages, reflected by the adverse impact that the Navy's wrongful activities have had on the utility and market value of the Property;

2. Incidental and consequential damages.

*Id.* at 17.

### Plaintiffs' Refusal to Renew the 1995 Agreement

By letter dated August 14, 2000, the Navy sought to renew the 1995 Agreement, set to expire on November 2, 2000, for another five-year term through November 3, 2005. COFC Compl. ¶ 19. The 1995 Agreement could "be renewed at the option of the Navy, with the consent of Heritage Minerals, which consent will not be unreasonably [withheld], for an additional period of (5) years provided that notice be given in writing to [Heritage Minerals] at least 60 days before the end of the original AGREEMENT term...." Def.'s Ex. 4 ¶ 2.

In an August 25, 2000 letter, Plaintiffs refused to consent to renewal of the 1995 Agreement citing "the Navy's refusal to provide reasonable compensation to plaintiffs for the damages sustained by plaintiffs arising from the installation of the monitoring wells as well as from the polluted groundwater." Def.'s Ex. 11; COFC Compl. ¶ 20. The letter stated:

> The consent of Heritage to the extension of the agreement is being withheld for a variety of reasons related to the failure of the Navy to adhere to the express and implied provisions to the November 3, 1995 agreement....
>
> While Heritage permitted the Navy to install monitoring wells at various locations selected by the Navy on the Heritage Property, the Navy has refused to provide any compensation to Heritage for the damages sustained by Heritage arising from the installation of the moni-

toring wells as well as from the pollution of groundwater which otherwise would have been useful to Heritage. The claims of Heritage with respect to the polluted groundwater are more fully set forth in litigation presently pending between Heritage and the Navy in the Untied States District Court for the District to New Jersey, Civ. Action # 99–83(MLC).

> In the event that the Navy construes the 1995 agreement not to have obligated the Navy to make such compensation, there was no consideration in the 1995 agreement for any obligation of Heritage.

Def.'s Ex. 11 at DOJ000189–190.

### The Administrative Order

Over the next several months, counsel for Plaintiffs and Defendant in the District Court litigation attempted to reach an agreement whereby Defendant would compensate Plaintiffs for the continuing presence of the wells. COFC Compl. ¶¶ 21–22. The parties were unable to reach an agreement, and Plaintiffs demanded that Defendant remove the wells. *Id.* ¶ 22. Subsequently, on October 11, 2001, Plaintiffs filed a motion in the District Court action to evict the Navy and the monitoring wells from their property. *Id.* ¶ 24. Plaintiffs withdrew their eviction motion after the Navy issued an Administrative Order affording access to the wells on Plaintiffs' property. *Id.* ¶¶ 25–26. The October 31, 2001 Administrative Order provided:

> Respondent, [Heritage,] shall afford the Department of the Navy and its officers, employees, agents, and contractors, including but not limited to contractors and subcontractors, full and unrestricted access to block 70, lot 24 and block 73, lot 1, Manchester Township, Ocean County, New Jersey, from the effective date of this Order and for such time as is reasonably necessary to complete the following remedial activities: installation of three groundwater monitoring wells and additional wells if deemed necessary pursuant to the Record of Decision, periodic collection of groundwater samples and maintenance of all Navy wells on the

Respondent's Property, and removal of said wells and restoration of the well-sites at the completion of the remedial project.

Pls.' Ex. J ¶ 19.

### The Appeal to the Third Circuit

On June 30, 2003, the District Court dismissed Plaintiffs' Complaint in its entirety as time-barred under the applicable statute of limitations. Plaintiffs appealed to the United States Court of Appeals for the Third Circuit on September 3, 2003. *Heritage Minerals, Inc. and Hovsons, Inc. v. United States,* USCA No. 03–3612.

### Plaintiffs' COFC Action

Following the docketing of their appeal, Plaintiffs filed their takings claim in this Court seeking just compensation under the Fifth Amendment of the United States Constitution alleging:

as a result of the Navy's act of taking from plaintiffs [their] property for the purpose of installing and maintaining certain groundwater wells to monitor contamination of the groundwater on plaintiffs' property that the Navy caused through its acts of discharging and releasing toxic and hazardous materials, substances and wastes into the water and ground at its Naval Air Engineering Station in Lakehurst, New Jersey, which is adjacent to plaintiffs' property.

COFC Compl. ¶ 1. Plaintiffs are requesting relief in the form of "just compensation for the deprivation of all property rights related to the Navy's acts of installing and maintaining groundwater-monitoring wells at the Property." *Id.* at 7.

### Discussion

Defendant filed this motion to dismiss for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500, alleging that Plaintiffs' filing of a complaint in this Court while their appeal in the Third Circuit was still pending bars this Court from asserting jurisdiction.

When the government takes property and fails to compensate the owner, the Tucker Act provides jurisdiction for this Court to enforce the owner's compensatory right. 28 U.S.C. § 1491(a)(1); *Boling v. United States,* 220 F.3d 1365, 1370 (Fed.Cir.2000).

The Tucker Act's jurisdictional grant is limited by 28 U.S.C. § 1500 which provides:

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Determining the Court's jurisdiction over this action for the purposes of 28 U.S.C. § 1500 requires the court to assess whether Plaintiffs had the same claim against the United States or its agent pending in another court at the time of filing here. *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Harbuck v. United States,* 378 F.3d 1324 (2004), *cert. denied,* 543 U.S. 1153, 125 S.Ct. 1386, 161 L.Ed.2d 118, (2005), *reh'g denied* 544 U.S. 993, 125 S.Ct. 1831, 161 L.Ed.2d 758 (2005); *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1549 (Fed.Cir.1994). As the Federal Circuit has recognized, the purpose of § 1500 is to "force an election where both forums could grant the same relief, arising from the same operative facts." *Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1564 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989); *see also United States v. County of Cook, Illinois,* 170 F.3d 1084, 1090–91 (Fed. Cir.1999). In other words, § 1500 is meant to "prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." *Johns–Manville Corp.,* 855 F.2d at 1562.

### Pendency of Claim

■ In order to determine whether § 1500 applies, the court must first examine whether plaintiff had any other suit or process against the United States pending in another court when it filed this action. *Loveladies Harbor, Inc.,* 27 F.3d at 1549; *Breneman v. United States,* 57 Fed.Cl. 571, 575 (2003). When

determining whether a claim is "pending" for purposes of § 1500, this Court follows the longstanding principle that "the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Keene Corp.*, 508 U.S. at 207, 113 S.Ct. 2035 (citations omitted); *Whyte v. United States*, 59 Fed.Cl. 493, 496 (2004).

■ Where a party appeals the decision of a district court before filing here, the claim before the appellate court is pending for purposes of § 1500. *County of Cook, Illinois*, 170 F.3d at 1090–91; *see also Hornback v. United States*, 36 Fed.Cl. 552, 555–56 (1996) (dismissing plaintiff's complaint due to an appeal regarding the same claim pending in the Ninth Circuit at the time plaintiff filed in this court); *Wilson v. United States*, 32 Fed.Cl. 794, 795–96 (1995) (dismissing the COFC action after determining claims were the same as those on appeal).

### Same Claim

■ For a claim to be precluded under 28 U.S.C. § 1500, "the claim pending in another court must arise from the same operative facts, and must seek the same relief." *Harbuck*, 378 F.3d at 1328 (quoting *Loveladies*, 27 F.3d at 1551). As the Federal Circuit recognized, "claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." *Loveladies*, 27 F.3d at 1549 (quoting *Johns–Manville Corp.*, 855 F.2d at 1567). Determining whether "the claims are the same or distinctly different 'requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit.'" *Harbuck*, 378 F.3d at 1328 (quoting *Keene Corp.*, 508 U.S. at 210, 113 S.Ct. 2035).

■ In *Loveladies*, the Federal Circuit addressed the operative facts inquiry as follows:

Despite its lineage, it can be argued that there is a basic epistemological difficulty with the notion of legally operative facts independent of a legal theory. Insofar as a fact is 'operative'—i.e., relevant to a judicially imposed remedy—it is necessarily associated with an underlying legal theory, that is, the cause of action. For example, without legal underpinning, words in a contract are no different from casual correspondence. Because it is unnecessary for our decision in this case, we need not further refine the meaning of 'operative facts.'

27 F.3d at 1551 n. 17. Here, the facts "relevant to a judicially imposed remedy" differ in the District Court action being appealed and the instant action. The operative facts underlying the District Court action and appeal are the Navy's contamination of the groundwater on its base which allegedly began in 1958 and the migration of those contaminants onto Heritage's property. Conversely, the operative facts underlying the COFC action stem from the subsequent installation of the monitoring wells and the October 31, 2001 Administrative Order requiring Heritage to permit the Navy to install additional wells and enter its property to monitor and maintain the wells.[4] Plaintiffs' District Court complaint does not reference the Administrative Order—which came well over two years later—and does not allege that the government's installation and maintenance of the groundwater-monitoring wells were wrongful. Indeed, at the time of the filing of the District Court complaint, the Navy's installation and maintenance of the wells were not wrongful—they were done with Heritage's express permission. The only mention of groundwater-monitoring wells in the District Court complaint is an averment that the government installed and maintained the wells pursuant to Heritage's written permission in the 1995 Agreement. Such express consent to enter Plaintiffs' property would, as Plaintiffs acknowledged, defeat a takings claim and could hardly be deemed an "opera-

---

4. According to Heritage's filings, prior to the Administrative Order, the Navy's entries onto the property between November 15, 1991, and June 16, 2001, were made with Heritage's express written consent. However, this consent expired on June 16, 2001, and the October 31, 2001 Administrative Order directed Plaintiffs to permit the Government full and unrestricted access to their land to install groundwater-monitoring wells, periodically collect groundwater samples, maintain the wells and remove the wells upon completion of the project. Pls.' Ex. J.

tive" fact which would entitle them to relief under a takings theory.[5]

As the Court noted in *Branch v. United States*, 29 Fed.Cl. 606, 609 (1993), "[c]laims involving the same general factual circumstances, but distinct material facts can fail to trigger section 1500." That is, while claims "may be supported by some common operative facts," § 1500 is not implicated where "the material facts supporting each claim [are] characterized as largely dissimilar." *See also Williams v. United States*, 71 Fed. Cl. 194 (2006); *Lucas v. United States*, 25 Cl.Ct. 298, 305 (1992) (breaches of separate contracts arise from dissimilar material facts and different operative facts). Here, the operative facts underlying Plaintiffs' taking claim, their refusal to consent to the Navy's entry on their property to service the wells and the Administrative Order granting the Navy such entry, represent a change in the facts underlying the District Court action and appeal. There, Plaintiffs had consented to the Navy's entry on their property to install and monitor the wells, and the gravamen of that complaint was the underlying contamination—not the Navy's then authorized entry upon their land to install and maintain the wells.

In support of its motion to dismiss, Defendant contends that Plaintiffs' FTCA administrative claim dated February 14, 1995, underlying the District Court action, complained of the testing and monitoring activities on Plaintiffs' property and thus relied upon the same operative facts. However, the FTCA administrative claim was filed several months before the 1995 Agreement referenced in the District Court complaint authorizing the Navy to enter Plaintiffs' land for purposes of installing and monitoring the wells. The potential testing and monitoring referenced in the administrative claim were not challenged in the District Court-presumably because they were done with Plaintiffs' consent under the 1995 Agreement. Allegations in an FTCA administrative claim which are not raised in the ensuing District Court action have no bearing on the § 1500 inquiry. *Keene* and its progeny call for a comparison between claims asserted in lawsuits in the Court of Federal Claims and the other Court, not claims mentioned in an administrative claim underlying an FTCA action which are then abandoned in the court complaint.

*Relief*

As the Court in *Loveladies* recognized, to come within the proscription of 28 U.S.C. § 1500, there must be a showing *both* that the claims arise from the same operative facts *and* that they seek the same relief. 27 F.3d at 1551-52 (emphasis added). *See Harbuck*, 378 F.3d at 1328 (finding both requirements of § 1500 met); *Dico, Inc. v. United States*, 48 F.3d 1199, 1204 (Fed.Cir.1995) ("*Loveladies* further established that if the Court of Federal Claims complaint pleads facts which demonstrate a different legal injury from that pursued in another court, *or* seeks different relief, it involves a different claim which § 1500 does not bar."). Failing to fulfill either the "same operative facts" or the "same relief" requirement precludes the COFC from applying 28 U.S.C. § 1500. As such, because different operative facts underlie the claims in the COFC and Third Circuit, it matters not that the relief sought in both Courts is overlapping.[6]

**5.** Plaintiffs stated:

> Significantly, Heritage has never claimed that a taking occurred when Heritage consented to the Navy's access in 1991. A takings claim for the period during which the Navy had consent to enter Heritage's Property would not survive, as a "property owner's consent [...] vitiates a claim that the government took the property for public use within the meaning of the Fifth Amendment." *Janowsky v. United States*, 23 Cl.Ct. 706, 713 (1991).... It follows then, that there is no compensable taking where, as here, a private property owner voluntarily permits to the entry by the government upon its land.

Pls.' Br. in Opp. to Def.'s Mot. Dis. at 8–9.

**6.** In the District Court action being appealed, Plaintiffs seek damages stemming from the impact that the Navy's wrongful activities had on the utility and market value of the property. In the COFC action, Plaintiffs seek a subset of those damages, *i.e.*, compensation for the deprivation of property rights relating to the installation and maintenance of the wells. Should the appeal be sustained and the District Court award the damages which encompass those sought here, Plaintiff would be precluded from obtaining a double recovery. *See generally* DAN S. DOBBS, LAW OF REMEDIES § 3.3(7) 231 (2d ed. 1993) ("In general, two different measures [of damages] should not be used to compensate for the same underly-

In sum, because the District Court action and this action are based upon different operative facts, § 1500 does not divest this Court of jurisdiction.

### Conclusion

1. Defendant's Motion to Dismiss for lack of jurisdiction under 28 U.S.C. § 1500 is **DENIED.**

2. The Court will convene a telephonic conference to schedule further proceedings in this action on **July 26, 2006, at 3:00 p.m. EST.**

ing loss, even though the two measures produce different figures or use different calculations.").